[No. A099383. First Dist., Div. Two. Dec. 17, 2003.]

THE PEOPLE, Plaintiff and Respondent, v.
CHARLES KRAH, Defendant and Appellant.

**[ CERTIFIED FOR PARTIAL PUBLICATION* ]**

---

* Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part III. D.

## COUNSEL

John L. Staley, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Gerald A. Engler, Assistant Attorney General, John Deist and Allan Yannow, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**HAERLE, J.—**

## I. INTRODUCTION

Charles Krah (Krah) appeals a judgment committing him to Atascadero State Hospital pursuant to a jury determination that he is a sexually violent predator. (Welf. & Inst. Code, § 6600, et seq.)[1] Krah contends the judgment must be reversed because the trial court (1) lacked jurisdiction; (2) excluded relevant evidence; and (3) made instructional errors. We affirm.

## II. FACTS AND PROCEDURAL HISTORY

### A. *Krah's background and history of sexual misconduct*

Krah was born in 1930. He was sent to a boy's home at the age of 10 after he was caught molesting his half sister. When Krah was 17, he entered the military, from which he received a dishonorable discharge.

Krah has three children. He sexually abused at least two of his children during the late 1960's. On at least one occasion, Krah forced his 11-year-old son to engage in oral copulation with him and his girlfriend at the time. In 1966 Krah began sexually molesting his five-year-old daughter. The abuse continued until 1969, when Krah was arrested after the abuse was reported by a grandparent.

In 1978, Krah went to the home of friend of a friend to watch television. The only other people in the home were a four-year-old girl and her 14-year-old female babysitter. After the little girl used the bathroom, she asked for help pulling up her shorts and underpants. Krah told the girl to

---

[1] Undesignated statutory references are to the Welfare and Institutions Code unless otherwise indicated.

leave the pants off, or to take her clothes back off. He asked her to dance for him and told her she looked sexy. Krah also put his arms around the babysitter, ran his hand on her stomach and gave her a pill he said was Valium. Around this same time period Krah made untoward advances toward a 12-year-old girl. He followed her around town in his car and called her at her home several times. Krah pleaded guilty to misdemeanor battery in connection with the incident involving the babysitter.

In 1979, Krah arranged to get a ride from an acquaintance to an event at a nearby school. The man drove while Krah sat in the backseat with the man's seven-year-old daughter, Gwendolyn. The group stopped for ice cream on the way to the event. Later, Gwendolyn told her father that each time she rode in the back with Krah, Krah put his hand under her dress, inside her underpants, and continually stroked and caressed her anus. Krah suffered a Penal Code section 288 conviction because of this incident.

Between 1984 and 1987, Krah sexually molested Melissa, who was 12 years old when the abuse finally ended. The first incident occurred in Melissa's home. Krah forced Melissa to have intercourse with him while her parents were in the backyard. According to Melissa, Krah subsequently repeatedly molested her by, among other things, French kissing her, sucking her breast, putting his finger in her anus, forcing her to orally copulate him and having intercourse with her. The abuse continued after Melissa's family moved to San Mateo County.

In 1987, Krah attempted to develop a relationship with a woman and her two little girls. Krah and the woman had met once, a few years earlier. Krah appeared at the woman's home with toys for the girls. The woman did not know how Krah obtained her address. Krah was eventually invited to dinner. After dinner, the woman answered the telephone. While she was out of the room, Krah began to play with the two girls and touched the genitals of five-year old Amy and seven-year old Rebecca. Rebecca stated that Krah had abused them on prior occasions as well.

On September 21, 1987, Krah pleaded no contest to one count of violating Penal Code section 288, subdivision (a) by molesting Amy in Sonoma County. On October 27, 1987, Krah pleaded no contest to one charge of violating Penal Code section 288, subdivision (b) by molesting Melissa in Sonoma County. The Sonoma County Superior Court conducted a combined sentencing hearing in the two cases on December 1, 1987. Krah was sentenced to a 13-year term for the charge pertaining to Amy and a consecutive eight-year term for the charge involving Melissa, resulting in a total prison term of 21 years.

On May 25, 1988, Krah pleaded no contest to two counts of violating Penal Code section 288, subdivision (a) by molesting Melissa in San Mateo County. The San Mateo County Superior Court conducted a sentencing hearing on August 5, 1988. The court resentenced Krah to a combined 21-year term for the Sonoma County cases. It then imposed additional consecutive six-year terms with all but two years of the sentence stayed for each of the two section 288, subdivision (a) violations committed in San Mateo County. Thus, Krah was sentenced to a total combined prison sentence in all three cases of 25 years.

**B.** *Proceeding to Declare Krah a Sexually Violent Predator*

On September 21, 2000, the Sonoma County District Attorney filed a petition pursuant to section 6600 et seq. alleging, among other things, that Krah is a sexually violent predator and that he should be committed to a state hospital. On November 14, 2000, the trial court conducted a hearing and determined there was probable cause to order Krah to stand trial on the petition.

On September 7, 2001, Krah filed a motion to dismiss the petition on the ground that San Mateo County had exclusive jurisdiction under section 6600 et seq. The trial court denied Krah's motion to dismiss on September 25, 2001. After a mistrial in January 2002, a second jury trial began on May 22, 2002.

The People presented evidence, which included the testimony of four doctors, that Krah is a sexually violent predator within the meaning of section 6600. Evidence supportive of the People's contention that Krah's condition makes him likely to reoffend included proof that Krah blames his victims for his prior offenses, that he lacks remorse, and that he lacks volitional control. There was also evidence that Krah currently believes that his past child victims enjoyed the sexual activity, that he continues to have sexual thoughts about children, that he masturbated to images of children as recently as 2000, and that he is currently sexually active.

The primary defense theory was that Krah is not a sexually violent predator because his advanced age and poor health make it unlikely he will reoffend if he is released into the community. The defense supported this theory with medical testimony. In addition, Krah testified on his own behalf.

On June 14, 2002, the jury found that Krah is a sexually violent predator. On June 20, 2002, the court committed Krah to Atascadero State Hospital.

## III. DISCUSSION

### A. *The Sexually Violent Predators Act*

In *People v. Roberge* (2003) 29 Cal.4th 979 [129 Cal.Rptr.2d 861, 62 P.3d 97] (*Roberge*), our Supreme Court set forth a brief overview of the Sexually Violent Predators Act (SVPA). Because that overview provides useful context for the issues raised by this appeal, we repeat it here:

"The SVPA provides for 'the involuntary civil commitment of certain offenders, following the completion of their prison terms, who are found to be [sexually violent predators] because they have previously been convicted of sexually violent crimes and currently suffer diagnosed mental disorders which make them dangerous in that they are likely to engage in sexually violent criminal behavior.' [Citation.] The civil commitment is for two years, which may be renewed if there is no improvement in the defendant's mental condition. [Citations.]

"The process of determining whether a convicted sex offender can be involuntarily committed under the SVPA as a sexually violent predator ' "takes place in several stages, both administrative and judicial." ' [Citations.] ' "Generally, the Department of Corrections screens inmates in its custody who are 'serving a determinate prison sentence or whose parole has been revoked' at least six months before their scheduled date of release from prison. (§ 6601, subd. (a).) . . . If officials find the inmate is likely to be [a sexually violent predator], he is referred . . . for a *'full evaluation'* as to whether he meets the criteria in section 6600. (§ 6601, subd. (b).)" ' [Citations.]

"Full evaluation, as described in section 6601, subdivision (d), is by ' "two practicing psychiatrists or psychologists, or one practicing psychiatrist and one practicing psychologist, designated by the Director [of the Department of Mental Health]. If both evaluators concur that the person has a diagnosed mental disorder so that he or she is likely to engage in acts of sexual violence without appropriate treatment and custody, the Director . . . shall forward a request for a [commitment] petition to the county . . . where the offender was convicted of the crime for which he is currently imprisoned." ' [Citation.] If the county's legal counsel agrees with the request and files a petition for commitment in superior court, that filing ' "triggers a new round of proceedings under the Act." ' [Citations.]

"First, there is a hearing before the superior court to decide ' "whether there is 'probable cause' to believe the person named in the petition is likely to engage in sexually violent predatory criminal behavior upon release." '

[Citations.] If the court decides such probable cause exists, the matter proceeds to trial, at which either party can demand that trial be by jury. (§ 6603, subds. (a) & (b).) Proof that the person qualifies as a sexually violent predator must be beyond a reasonable doubt (§ 6604), and a jury's verdict must be unanimous. (§ 6603, subd. (d).) Moreover, the trier of fact must determine not only that the defendant is ' likely [to] engage in sexually violent behavior' (§ 6600, subd. (a)), but also whether that behavior would be 'directed "toward a stranger, a person of casual acquaintance with whom no substantial relationship exists, or an individual with whom a relationship has been established or promoted for the primary purpose of victimization." (§ 6600, subd. (e).)' [Citation.]" (*Roberge, supra,* 29 Cal.4th at pp. 984–985.)

## B. *Jurisdiction*

Krah contends that his trial court motion to dismiss this action should have been granted because Sonoma County lacked jurisdiction to adjudicate this matter.

Section 6601, subdivision (h), states that, if the State Department of Mental Health determines that a person is a sexually violent predator, the Director of the Department "shall forward a request for a petition to be filed for commitment under this article to the county designated in subdivision (i)." Subdivision (i) states that "[i]f the county's designated counsel concurs with the recommendation, a petition for commitment shall be filed in the superior court of the county in which the person was convicted of the offense for which he or she was committed to the jurisdiction of the Department of Corrections."

Krah interprets section 6601, subdivision (i) (section 6601(i)), as requiring that a commitment petition be filed in the county in which the defendant has suffered his most recent conviction. Since Krah's most recent conviction was in San Mateo County, he asserts that San Mateo had exclusive jurisdiction to determine whether he is a sexually violent predator. The only published decision we have found that is directly on point rejects Krah's interpretation of section 6601(i). (*Cheek v. Superior Court* (2002) 103 Cal.App.4th 520 [126 Cal.Rptr.2d 820] (*Cheek*).)

In *Cheek*, a SVPA petition was filed with respect to a prisoner who, like Krah, was serving a sentence pursuant to convictions obtained in more than one county. Cheek had been convicted of vehicle theft in Contra Costa County in 1979 and sentenced to probation. (*Cheek, supra,* 103 Cal.App.4th at p. 522.) Then, in 1980, Cheek was convicted of rape and forcible oral copulation in Santa Cruz County and was sentenced to a 20-year prison term. Before Cheek began serving his sentence, he was returned to Contra Costa

for probation violation proceedings. Before the probation violation hearing was held, Cheek escaped from custody and committed another rape in Lake County. In 1981, Cheek was convicted of rape and other charges in Lake County and was sentenced to a term of 11 years four months to run consecutively with the Santa Cruz County sentence. Cheek was then transported to Contra Costa County where the court revoked probation for the 1979 vehicle theft conviction. The Contra Costa court sentenced Cheek to an eight-month prison term to run consecutively with the sentences imposed in Santa Cruz and Lake counties. The abstract of judgment issued by the Contra Costa court listed Cheek's convictions from all three counties and combined the sentences from these counties into a 32-year prison term. (*Id.* at pp. 522–523.)

At the end of Cheek's prison term, SVPA proceedings were initiated against him in Santa Cruz County. Cheek was committed as a sexually violent predator and subsequent petitions to extend his commitment were filed in Santa Cruz County. (*Cheek, supra,* 103 Cal.App.4th at p. 523.) Cheek moved to dismiss the petitions on the ground that Contra Costa was the only proper venue for filing a SVPA petition against him since that was the county which last sent him to state prison. Although the trial court denied the motion to dismiss, it transferred the case to Lake County, the county where it concluded that Cheek had suffered his most recent conviction. (*Id.* at p. 524.) The *Cheek* court issued a peremptory writ of mandate commanding the Santa Cruz court to reconsider its order transferring the matter to Lake County.

The *Cheek* court held that Santa Cruz, Contra Costa and Lake Counties all had jurisdiction under the SVPA to hear a commitment petition filed against Cheek. (*Cheek, supra,* 103 Cal.App.4th at p. 526.) The court reasoned that "[e]ach of those counties qualifies, under the plain language of the statute, as one of 'the count[ies] in which the person was convicted of the offense for which he or she was committed to the jurisdiction of the Department of Corrections.' (§ 6601, subd. (i).) Defendant's status as a prisoner was based on the aggregate sentence comprised of the prison commitments imposed in all three counties." (*Ibid.*)

■ Krah contends that *Cheek* was wrongly decided because it is inconsistent with the language of section 6601(i). Krah underscores the fact that the statute is written in the singular tense and argues that only the court that commits, which he interprets to mean "delivers," the defendant to the Department of Corrections has jurisdiction. We are not persuaded. As the *Cheek* court explained, the Legislature expressly provided that, throughout the Welfare and Institutions Code, the singular includes the plural and the plural includes the singular. (*Cheek, supra,* 103 Cal.App.4th at p. 525.) Further, contrary to Krah's contention, section 6601(i) focuses on

the county that convicted the defendant of the crime(s) for which he was committed to the custody of the Department of Corrections, not the county that physically delivered the defendant into custody. More than one county can be responsible for a commitment of the defendant to the jurisdiction of the Department of Corrections, as was true in *Cheek* and in the present case. As the *Cheek* court noted, nothing in the language of the statute itself supports the conclusion that "only the *last* county to commit the person to prison has jurisdiction." (*Id.* at p. 526.)

Krah also argues that we should not follow *Cheek* because its holding is inconsistent with our Supreme Court's view that, if the Department of Mental Health psychiatrists "both find that the defendant 'has a diagnosed mental disorder so that he or she is likely to engage in acts of sexual violence without appropriate treatment and custody' (§ 6601, subd. (d)), the department forwards a petition for commitment to the county of the defendant's last conviction (*ibid.*)." (*People v. Torres* (2001) 25 Cal.4th 680, 683 [106 Cal.Rptr.2d 824, 22 P.3d 871] (*Torres*).) Krah argues that this language in *Torres* "regarding the jurisdiction in which the SVP petition should be filed is clear and should not be arbitrarily disregarded by the lower appellate court."

Krah simply ignores the fact that *Torres* is factually and legally inapposite. The *Torres* defendant was serving a sentence for a single conviction obtained from a single county when the SVPA petition was filed in that case. (*Torres, supra,* 25 Cal.4th at p. 683.) Under those circumstances, a commitment petition would be delivered to the county of the defendant's last conviction. More importantly though, the issue in *Torres* was whether the SVPA requires that the trier of fact to make a finding that a defendant's prior sexual crimes involved "predatory acts." (*Id.* at p. 682.) The *Torres* court was not asked to and did not determine the jurisdictional issue raised here.

The *Torres* court's statement about the county where a commitment petition is filed is not a substantive ruling. Rather, the statement was part of the court's preliminary description of the SVPA. (*Torres, supra,* 25 Cal.4th at p. 683.) In this regard, we note that SVPA cases the Supreme Court decided after *Torres* do not repeat the statement upon which Krah now relies. (See, e.g., *Roberge, supra,* 29 Cal.4th at pp. 984–985 [" '[T]he Director shall forward a request for a [commitment] petition . . . to the county . . . where the offender was convicted of the crime for which he is currently imprisoned' "]; *People v. Superior Court (Ghilotti)* (2002) 27 Cal.4th 888, 903 [119 Cal.Rptr.2d 1, 44 P.3d 949] (*Ghilotti*) [" '[T]he Director shall forward a request for a [commitment] petition . . . to the county designated in [section 6601,] subdivision (i)' . . . i.e. the county where the offender was convicted of the crime for which he is currently imprisoned"].)

As the *Cheek* court observed, statements made in the context of setting forth a preliminary overview of the SVPA, in cases that do not even address the issue presented, simply do not provide useful guidance. (*Cheek, supra*, 103 Cal.App.4th at p. 526 [rejecting an analogous argument based on statements in other Court of Appeal decisions].)

We hold that Sonoma County had jurisdiction over the commitment petition in this case. It was "one of 'the count[ies] in which the person was convicted of the offense for which he or she was committed to the jurisdiction of the Department of Corrections.' (6601, subd. (i).)" (*Cheek, supra*, 103 Cal.App.4th at p. 526.)

### C. *Evidence Regarding the Terms and Conditions of Parole*

Krah argues that the trial court committed reversible error by excluding evidence of the terms and conditions of parole that would have been imposed on him if he were released from custody. He contends such evidence was relevant under section 6600, subdivision (a)(1) (section 6600(a)(1)).

Section 6600(a)(1) states: " 'Sexually violent predator' means a person who has been convicted of a sexually violent offense against two or more victims and who has a diagnosed mental disorder that makes the person a danger to the health and safety of others in that it is likely that he or she will engage in sexually violent criminal behavior."

Krah contends that evidence of the terms and conditions of his parole should have been admitted because it was relevant to the jury's determination of whether " 'it is likely that he . . . will engage in sexually violent criminal behavior.' " (Quoting § 6600(a)(1).) According to Krah, "[c]ommon sense suggests that the terms and conditions by which [he] will have to abide when he is on parole will affect the likelihood that he will engage in the commission of sexual criminal acts." He points out that many of the restrictions that will be imposed on him "are designed to make sure that he does not commit another offense."

■ Krah's theory of relevance reflects a fundamental misunderstanding of section 6600(a)(1). This statutory provision directs the trier of fact to determine whether the defendant has a *"diagnosed mental disorder"* that predisposes him to engage in sexually violent criminal behavior. (*Ibid.*, italics added.) Evidence of the terms and conditions of a parole release is simply not relevant to the determination whether the defendant has the type of medical condition that is an element of the definition of a sexually violent predator. ■ Further, admitting such evidence might well confuse and mislead a jury. For example, a jury presented with such evidence might mistakenly base its determination

on an assessment of the likely effectiveness of the policing function of the prospective parole officer rather than on the relevant evidence pertaining to the defendant's actual mental condition. Section 6601(a)(1) simply does not ask or even permit the trier of fact to consider whether imposing temporary restrictions on the defendant's liberty while he is out of custody would effectively prevent him from committing offenses that his condition otherwise disposes him to commit.

Krah relies on *Ghilotti, supra,* 27 Cal.4th 888. In *Ghilotti,* our Supreme Court addressed the statutory standards and procedures that govern the determination whether to file a petition to commit or recommit a person as a sexually violent predator. The court held that a petition cannot be filed unless two qualified mental health professionals " have agreed, by correct application of the statutory standards [set forth in section 6601, subdivision (d)] that the person '*has a diagnosed mental disorder so that he or she is likely to engage in acts of sexual violence without appropriate treatment and custody.*' " (*Id.* at p. 894, quoting § 6601, subd. (d), italics added.)

The *Ghilotti* court also addressed the meaning of the statutory standards contained in section 6601, subdivision (d) (section 6601(d)). (*Ghilotti, supra,* 27 Cal.App.4th at p. 915.) It found that the word "likely" in section 6601(d) means the person presents a "substantial danger" or a "serious and well-founded risk" of reoffending. (*Ghilotti,* at p. 922.) The court also interpreted "without appropriate treatment and custody" to mean that "insofar as the protocol permits,[2] the evaluators may consider any factor which, in their professional judgment, is relevant to the ultimate issue whether the person is a substantial danger to reoffend if free in the community without any conditions, supervision, monitoring, or mandatory treatment in the Director's custody." (*Ghilotto,* at p. 927.)

Krah contends that the *Ghilotti* court's interpretation of section 6601(d) applies equally to section 6600(a)(1). (Citing *Roberge, supra,* 29 Cal.4th 979.) He further contends that *Ghilotti* establishes that "any factor bearing on the risk of an individual reoffending" is relevant when "assessing whether the individual is a sexually violent predator." Thus, Krah maintains that evidence of the terms and conditions of a person's anticipated parole is admissible because it is a relevant factor bearing on the risk that he or she will reoffend.

In *Roberge, supra,* 29 Cal.4th 979, the court held that the word "likely" has the same meaning in section 6600(a)(1) as it does in section 6601(d). (*Roberge, supra,* 29 Cal.4th at pp. 987–988.) Thus, *Roberge* supports

---

[2] The SVPA requires an evaluator to make an assessment in accordance with a standardized assessment protocol developed and updated by the Department of Mental Health. (§ 6601, subd. (c).)

the conclusion that evidence which is relevant to the evaluators' section 6601(d) determination whether the defendant is likely to reoffend may also be relevant to the jury's analogous determination under section 6600(a)(1). (*Roberge*, at p. 988, fn. 2.)

However, we reject Krah's contention that *Ghilotti* permits the mental health evaluator to consider *any* factor bearing on the risk of an individual reoffending. Rather, the court held the evaluator may consider any factor which is (1) permitted by the protocol and (2) relevant to "the ultimate issue whether the person is a substantial danger to reoffend if free in the community *without any conditions, supervision, monitoring, or mandatory treatment in the Director's custody.*" (*Ghilotti, supra,* 27 Cal.4th at p. 927, italics added.) For example, the court found that an evaluator could consider whether the defendant's mental disorder, "though dangerous if untreated, is of a kind and extent that can be effectively treated in the community, and whether the disorder leaves the person willing and able to pursue such treatment *voluntarily.*" (*Id.* at p. 927, italics added.)

█ To the extent *Ghilotti* is applicable to our interpretation of comparable language in section 6601(a)(1), that case does not support Krah's contention that evidence of the terms and conditions of his anticipated parole should have been admitted. *Ghilotti* reinforces our conclusion that the relevant inquiry is whether the defendant's mental condition makes it likely he will reoffend. Evidence that the defendant's condition does not preclude him from voluntarily pursuing treatment if unconditionally released would be relevant under this test. (*Ghilotti, supra,* 27 Cal.4th at p. 927.) However, evidence that the defendant would be *required* to comply with terms and conditions of parole would not be relevant. Such evidence has no bearing on the determination whether the defendant has a disorder which makes it likely he will reoffend; it does not relate to the nature of the defendant's disorder or reflect in any way his willingness or ability to pursue treatment voluntarily.

Thus, we conclude the trial court did not err by excluding evidence regarding the terms and condition of parole that would apply to Krah had he been released.

**D. *Instructions*\***

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

\* See footnote, *ante,* page 534.

## IV. DISPOSITION

The judgment is affirmed.

Kline, P. J., and Ruvolo, J., concurred.

Appellant's petition for review by the Supreme Court was denied March 17, 2004.