In the MATTER OF the CARE AND TREATMENT OF Carl KIRK, Appellant,

v.

STATE of Missouri, Respondent.

No. SC 95752

Supreme Court of Missouri, **en banc.**

Opinion issued June 27, 2017

Kirk was represented by Chelsea R. Mitchell of the public defender's office in Columbia, (573) 777-9977.

The state was represented by Gregory M. Goodwin and Shaun J. Mackelprang of the attorney general's office in Jefferson City, (573) 751-3321.

Paul C. Wilson, Judge

◼ Following a jury trial, Carl Kirk ("Kirk") was committed to the custody of the Department of Mental Health under the Sexually Violent Predator Act, sections 632.480 through 632.525[1] (the "SVPA" or the "Act"). Kirk appealed to the court of appeals, and the court of appeals transferred the case to this Court prior to opinion on the ground that the appeal involves issues within this Court's exclusive appellate jurisdiction as set forth in article V, section 3, of the Missouri Constitution. This Court has jurisdiction,[2] and the judgment is affirmed.

## Facts

Under section 632.480(5), to commit someone to the custody of the Department of Mental Health as a sexually violent predator, the state must prove by clear and convincing evidence that the respondent: (1) has committed a sexually violent offense; (2) suffers from a mental abnormality; and (3) this mental abnormality "makes the person more likely than not to engage in predatory acts of violence if not

1. Unless otherwise stated, all statutory references are to the Revised Statutes of Missouri 2000 and Supp. 2014.

2. This Court's "exclusive appellate jurisdiction is not invoked simply because a case involves a constitutional issue." *McNeal v. McNeal–Sydnor*, 472 S.W.3d 194, 195 (Mo. banc 2015). To invoke the Court's exclusive jurisdiction, "[t]he constitutional issue must be real and substantial, not merely colorable." *Id.* When a claim is not real and substantial but, instead, merely colorable, the case is not within this Court's exclusive jurisdiction and review in the court of appeals is proper. Recently, the court of appeals has held that cases involving many of the same constitutional claims raised by Kirk properly were reviewed in the court of appeals because those claims "have been addressed by either the United States Supreme Court or the Missouri Supreme Court [and, therefore,] do not

involve fair doubt or reasonable room for disagreement. Rather, they are merely colorable." *See, e.g., Matter of Brown v. State*, No. WD79594, 519 S.W.3d 848, 2017 WL 1149150 (Mo. App. Mar. 28, 2017); *Matter of Underwood*, No. WD79194, 519 S.W.3d 861, 2017 WL 1632592 (Mo. App. May 2, 2017). This Court agrees with the conclusion in *Brown* and *Underwood* that the issues raised there do not fall within this Court's exclusive appellate jurisdiction. Even though the court of appeals erred in transferring this case here, this Court—on its own motion—grants transfer from the court of appeals prior to opinion pursuant to Rule 83.01 and, therefore, has jurisdiction under article V, section 10, of the Missouri Constitution. *See Armstrong-Trotwood, LLC v. State Tax Comm'n*, 516 S.W.3d 830, 834 (Mo. banc 2017); *Breitenfeld v. Sch. Dist. of Clayton*, 399 S.W.3d 816, 820 n.3 (Mo. banc 2013).

confined in a secure facility." Taken in the light most favorable to the jury's verdict, Kirk's committal was based upon the following facts.

Around 1985, Kirk pleaded guilty to having inserted his penis between the legs of a young boy. He was released from the Department of Corrections in 1987 and, less than three months after his release, he sodomized his 10- or 11-year-old nephew. Sodomy is a sexually violent crime under section 632.480(4). Based on Kirk's history of sexual behaviors directed toward young boys, Dr. Nena Kircher, a licensed psychologist, diagnosed Kirk as suffering from pedophilia as described in the Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV-TR"). Dr. Kircher opined that Kirk's pedophilia caused him serious difficulty in controlling his behavior. Dr. Kircher further opined that Kirk was a sexually violent predator and concluded that it was more likely than not that Kirk would commit a future act of sexual predatory violence if not securely confined.

As part of Dr. Kircher's risk assessment, Kirk was given the Static-99R and Stable-2007 tests. Kirk scored seven on the Static-99R test, a score that Dr. Kircher characterized as "pretty rare" and that placed Kirk's likelihood of reoffending in the 97th percentile of all test subjects. Kirk also scored 16 on the Stable-2007 test, placing him in the high-risk category. Among the other factors supporting Dr. Kircher's conclusion Kirk was more likely than not to commit a future act of sexual predatory violence if not securely confined were that he exhibited deviant sexual interest, that he had a history of childhood behavior problems and negative social influences, and that he had violated his parole.

Dr. Stephen Mandracchia, a licensed psychologist, similarly concluded Kirk was a sexually violent predator and it was more likely than not Kirk would commit a future act of sexual predatory violence if not securely confined. Like Dr. Kircher, Dr. Mandracchia diagnosed Kirk as a pedophile and determined that this mental abnormality caused Kirk serious difficulty in controlling his behavior. Dr. Mandracchia administered the Stable-2002R test, on which Kirk received a score of nine. This score, too, placed Kirk in the high-risk category.

Kirk testified at trial and admitted to sexually victimizing his first young victim, which conduct resulted in his incarceration. Kirk also admitted to sodomizing his young nephew less than three months after being released on parole. Though Kirk completed sex offender treatment while in prison, he admitted to characterizing this program as "a joke for real" and was not able to articulate any tools he learned to reduce his risk of reoffending if released.

## Analysis

### Point I

 Kirk claims that, by not granting his motions to dismiss, the trial court violated his

> ... rights to due process, equal protection, free thought, and a fair trial, to be free from double jeopardy, ex post facto laws, and cruel and unusual punishment, protected by U.S. Const., amends. I, X, VIII, XIV and Mo. Const. art. I, §§ 2, 9, 8, 10, 13, 21, in that [a] the purpose and effect of the SVP Act is punitive, lifetime confinement in DMH; [b] the law created a second punishment for past offenses; [c] the law does not provide a least restrictive environment or release men once no longer mentally ill or dangerous; and [d] the law permits commitment because of emotional capacity, without any proof of behavioral impairment.

This entire collection [3] of arguments has been rejected in the past. Kirk's arguments that unconditional release is not offered under the statute as revised in 2006 does not persuade the Court to depart from the relevant precedents. Whether the release provisions of the statute are constitutionally sufficient is not before the Court in this case, as this case involves only the issue of whether Kirk's commitment is constitutionally permitted. This Court finds it is.

■ One common theme in Kirk's arguments is that SVPA is a criminal statute because its purpose is to punish offenders for past conduct. This is incorrect. In reviewing a statutory scheme substantially similar to the SVPA, the United States Supreme Court held:

> Where the State has disavowed any punitive intent; limited confinement to a small segment of particularly dangerous individuals; provided strict procedural safeguards; directed that confined persons be segregated from the general prison population and afforded the same status as others who have been civilly committed; recommended treatment if such is possible; and permitted immediate release upon a showing that the individual is no longer dangerous or mentally impaired, we cannot say that it acted with punitive intent.

*Kansas v. Hendricks*, 521 U.S. 346, 368–69, 117 S.Ct. 2072, 138 L.Ed.2d 501 (1997) (quotation marks omitted).

Applying *Hendricks*, this Court held that—on its face—the SVPA evidences no punitive intent. *In re Care & Treatment of Van Orden*, 271 S.W.3d 579, 585 (Mo. banc 2008). Instead, even though SVPA "proceedings involve a liberty interest, they are civil proceedings." *Id.*

This Court's conclusion in *Van Orden* necessarily disposes of Kirk's argument that the SVPA violates constitutional prohibitions against ex post facto laws. *See State v. Honeycutt*, 421 S.W.3d 410, 419 (Mo. banc 2013) (noting "the phrase 'ex post facto law' applies exclusively to criminal laws"). "Because ... the ... Act is civil in nature, initiation of its commitment proceedings does not constitute a second prosecution" and, therefore, "does not violate the Double Jeopardy Clause, even though that confinement may follow a prison term." *Hendricks*, 521 U.S. at 369, 117 S.Ct. 2072.

■ Kirk's third and fourth arguments also fail. He argues the SVPA, unlike general civil commitment statutes, is unconstitutional because it does not require that he be held in the least restrictive environment. This Court previously rejected this argument. In *In re Care & Treatment of Norton*, 123 S.W.3d 170, 174 (Mo. banc 2003), this Court held that the SVPA "is narrowly tailored to serve [the] compelling state interest ... [of] protecting the public from crime," and that "interest justifies the differential treatment of those persons adjudicated as sexually vio-

---

**3.** Rule 84.04(d) requires a point relied on to: (1) identify the challenged ruling, (2) "concisely state the legal reasons" for the challenge, and (3) "explain in summary fashion why, in the context of case, those legal reasons support" the challenge. *Thummel v. King*, 570 S.W.2d 679, 688 (Mo. banc 1978). A point relied on violates Rule 84.04(d) when it groups together multiple, independent claims rather than a single claim of error, and a multifarious point is subject to dismissal. *Mis-*

*souri Bankers Ass'n, Inc. v. St. Louis County*, 448 S.W.3d 267, 271 (Mo. banc 2014). Kirk's first point relied on "is clearly multifarious, containing more than one basis for reversal. Multifarious points relied on are noncompliant with Rule 84.04(d) and preserve nothing for review." *Peters v. Johns*, 489 S.W.3d 262, 268 n.8 (Mo. banc 2016). Nevertheless, this Court exercises its discretion to review Kirk's defective point *ex gratia. Id.*

lent predators." *Id.* "Because the basis for commitment of sexually violent predators is different from general civil commitments, there is no requirement that sexually violent predators be afforded exactly the same rights as persons committed under the general civil standard." *In re Care & Treatment of Coffman*, 225 S.W.3d 439, 445 (Mo. banc 2007).

Finally, Kirk argues the SVPA is unconstitutional because it does not require proof that his mental abnormality impairs his ability to control his future behavior. In *Kansas v. Crane*, 534 U.S. 407, 413, 122 S.Ct. 867, 151 L.Ed.2d 856 (2002), the United States Supreme Court held that for civil commitment statutes such as the SVPA to be constitutional, "there must be proof of serious difficulty in controlling behavior." After that decision, this Court determined the SVPA does require such proof. The Court went on to explain, "To comply with *Crane*, the [jury] instruction defining mental abnormality must read as follows: As used in this instruction, 'mental abnormality' means a congenital or acquired condition affecting the emotional or volitional capacity that predisposes the person to commit sexually violent offenses in a degree *that causes the individual serious difficulty in controlling his behavior.*" *In re Care & Treatment of Thomas*, 74 S.W.3d 789, 792 (Mo. banc 2002). This instruction was given in Kirk's case and was supported by sufficient evidence.

Kirk contends this Court should ignore all the precedents cited above and grant relief on his claims, relying almost exclusively on *Van Orden v. Schafer*, 129 F.Supp.3d 839 (E.D. Mo. 2015) (amended, in part, by order dated December 11, 2015) (not reported in F. Supp. 3d, *see* 2015 WL 9269251). But the district court in that case expressly rejected claims that the SVPA is unconstitutional on its face. *Id.* at 865. More importantly, that case involved the claims of those who previously had been committed to the custody of the Department of Mental Health under the SVPA and who were claiming the release and treatment provisions of the SVPA had been unconstitutionally applied in their cases.[4] Kirk's appeal, on the other hand, involves the committal process under the Act, not the release process.

Even if the facts surrounding the application of the release provisions in other cases could somehow be relevant to the disposition of Kirk's claims concerning the commitment provisions, Kirk adduced no evidence concerning those facts in this case. Instead, he attempts to import wholesale the evidence and findings from an unrelated, not-yet-final litigation in federal district court. Had Kirk attempted to make a new, and more up-to-date, factual record regarding the application of the SVPA release provisions—and, again, assuming such a record would have any relevance to Kirk's facial constitutional challenges to the committal provisions of the SVPA—the state suggests the record would show significant changes implemented since the 2015 district court decision. Accordingly, for all these reasons, this

---

4. The Court also notes the district court's decision was—and remains—interlocutory because it dealt only with the question of liability. *See Van Orden v. Schafer*, No. 4:09CV00971, 2015 WL 9269251 (E.D. Mo., dated December 21, 2015) (not reported in F. Supp. 3d, *see* 2015 WL 9269251). The question of the remedies to which the *Van Orden* plaintiffs may be entitled has yet to be tried and may be settled. Moreover, the district court now has ordered briefing and argument on whether to reconsider its interlocutory decision on the question of liability in light of the decision in *Karsjens v. Piper*, 845 F.3d 394 (8th Cir. 2017) (clarifying the proper standard to be employed in ruling on claims asserting as-applied challenges to Minnesota's sexually violent predators act).

Court declines to find the interlocutory decision of the federal district court on unrelated claims in an unrelated litigation a sufficient basis to overrule the binding precedents cited to above.

### Point II

■ Kirk claims the SVPA is unconstitutional because it does not require proof beyond a reasonable doubt. This argument, too, previously has been rejected. In *Addington v. Texas*, 441 U.S. 418, 432-33, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979), the Supreme Court held that a clear and convincing burden of proof is sufficient for a civil commitment proceeding to pass constitutional muster. In *Van Orden*, this Court held that "Missouri's law for the civil commitment of sexually violent predators constitutionally may utilize the clear and convincing evidence burden of proof." *Van Orden*, 271 S.W.3d at 586. *Addington* and *Van Orden* made clear that the use of the clear and convincing standard was a decision the legislature constitutionally could make. In 2006, the legislature made that decision. The standard of proof now required under the SVPA and employed in Kirk's case is not unconstitutional.

### Point III

■ Kirk argues his case should have been dismissed because, even though the Attorney General determined that Kirk apparently met the statutory definition of a sexually violent predator, and even though the statutorily designated "prosecutors review committee" ("PRC") unanimously agreed, the "multi-disciplinary team" ("MDT") did not. Nothing in the SVPA requires the concurrence of the MDT before the Attorney General may file a civil commitment petition, and this Court declines to impose such a precondition.

Section 632.486 sets forth the preconditions for the Attorney General to file a civil commitment petition under the SVPA. It provides, in relevant part:

> When it appears that the person presently confined may be a sexually violent predator and the prosecutor's review committee appointed as provided in subsection 5 of section 632.483 has determined by a majority vote, that the person meets the definition of a sexually violent predator, the attorney general may file a petition ... [for civil commitment].

§ 632.486.

In *State ex rel. State v. Parkinson*, 280 S.W.3d 70 (Mo. banc 2009), this Court rejected attempts to find preconditions to the Attorney General filing a petition other than the two set forth in section 632.486. "[N]either a positive recommendation in the [end-of-confinement] report nor by the multidisciplinary committee is essential even to the attorney general's decision whether to proceed with the filing of a petition." *Id.* at 77. Not only does the SVPA not require the concurrence of the end-of-confinement report and/or the MDC, but this Court noted that the SVPA fully protects defendants from baseless proceedings or overreaching by the Attorney General by requiring that: (1) the PRC members agree that the defendant meets the statutory definition of a sexually violent predator before the Attorney General initiates a commitment proceeding, (2) the Attorney General show there is probable cause to believe the defendant meets that definition before the case can proceed to trial, and (3) once probable cause is shown, the defendant undergo a new psychological evaluation as to whether he is a sexually violent predator. *Id.* Accordingly, this Court rejects Kirk's claim that the concurrence of the MDC was a necessary precondition to the Attorney General commit-

ment petition in this case.[5]

## Point IV

 Kirk argues the trial court violated his constitutional rights and the statutory procedures when it limited his cross-examination of Dr. Kircher during the probable cause hearing and relied on her opinions (which Kirk contended were not supported by sufficient evidence) in finding the state had shown sufficient probable cause to proceed with the commitment process.

To show probable cause, the state may rest on its petition (and its attachments, e.g., the end-of-confinement report). § 632.489.2(2). Or the state may choose to supplement its petition with additional evidence, including live testimony. *Id.* Here, the state chose to supplement its petition and offered the testimony of Dr. Kircher. She testified she had done many dozens of sexually violent predator evaluations and had been trained to perform those evaluations and the risk assessments that form a part of those evaluations. She testified she conducted a 60-minute clinical interview with Kirk and reviewed and relied on Kirk's records from the Department of Corrections, his probation and parole records, and the file from Kirk's participation in the sex offender program. She testified concerning Kirk's criminal history, his history of other sexual misconduct, and her conclusion that—to a reasonable degree of medical certainty—Kirk suffered from a mental abnormality as that term is used in the SVPA. Dr. Kircher explained that Kirk met the diagnostic criteria for pedophilia and that this mental abnormality caused Kirk serious difficulty in controlling his behavior. Based on the risk assessment she performed, Dr. Kircher opined Kirk exceeded the statutorily required level of risk if he were not committed.

Kirk's counsel cross-examined Dr. Kircher at length in an attempt to undercut the credibility of her opinions and conclusions. Counsel pointed out that this was the first time Dr. Kircher had testified at a probable cause hearing and that she had not reviewed every single medical record concerning Kirk or his victims. In addition, the cross-examination ranged widely through the processes set forth in the SVPA, as well as Dr. Kirchner's understanding of the Act's provisions. The state objected repeatedly, arguing that this cross-examination was unnecessary and improper given the limited scope of the probable cause hearing. The trial court overruled most of the objections but cautioned Kirk's counsel that the purpose of the hearing was not to determine the credibility of Dr. Kircher's testimony or the weight it should be given. Instead, the sole question to be determined was whether the state had presented sufficient evidence that there was a triable issue of fact as to whether Kirk should be committed as a sexually violent predator. Kirk's counsel continued to pursue the same approach and, ultimately, the trial court sustained the state's objection that the cross-examination was seeking to weigh the evidence. The trial court rejected Kirk's argument that the state failed to lay a sufficient foundation for Dr. Kircher's testimony and concluded the totality of the state's evidence established probable cause that Kirk should be committed under the SVPA. The Court finds no error in this conclusion.

 Under the SVPA, the probate division plays a limited role during the probable cause phase of a commitment proceeding.

At the probable cause stage of SVP commitments, the probate division is

---

**5.** To the extent the description of the SVPA commitment process in *Van Orden,* 271 S.W.3d at 584, suggests otherwise, it misreads the SVPA and should not be followed.

tasked with acting as a "gatekeeper merely to determine if the State's evidence raises a triable issue of fact." This gatekeeping role does not allow the court to weigh evidence or make credibility determinations. Rather, the court's duty is to determine if probable cause exists to believe that the alleged offender is an SVP under the definition of that term in section 632.480(5).... Where there is probable cause that a suspected offender is an SVP under *any* theory, the commitment proceedings against him advance to the trial stage.

*Tyson v. State*, 249 S.W.3d 849, 852–53 (Mo. banc 2008) (internal citations omitted).

Dr. Kircher's opinions and conclusions satisfied the state's burden of showing probable cause under the standard expressed in *Tyson*. She diagnosed Kirk as suffering from pedophilia and, therefore, opined he had the mental abnormality required under the SVPA. Kirk argues her conclusion was not supported by competent evidence and should have been ruled inadmissible because there was no evidence Kirk's victims were prepubescent. Dr. Kircher, however, testified Kirk's history included sexual misconduct involving a five-year-old boy and an 11-year-old boy, and in her interview with Kirk he made statements indicating his sexual attraction to young boys. At most, Kirk's argument that Dr. Kircher had not examined the medical records of Kirk's victims to ensure they were, in fact, prepubescent goes to her credibility and the weight to be afforded her opinions and conclusions, not their admissibility. Accordingly, the trial court properly discounted those arguments in holding that, under *Tyson*, the state had shown adequate probable cause.

### Point V

Kirk claims the trial court erred in failing to grant his motion for change of venue as a matter of right under Rule 51.03. Kirk waived his claim for a change of venue, however, because he made his motion on August 16, 2013, yet failed to present this motion for determination until June 12, 2015. *See State v. Chambers*, 481 S.W.3d 1, 6 (Mo. banc 2016) (using "the application for a change of venue as a last-minute delay tactic is not evidence of an intent to exercise the right to a venue change"). In *Chambers*, the defendant filed an application for change of venue as a matter of right and had at least four opportunities to present the application for decision, yet waited eight months until the eve of trial to do so. *Id*. That conduct amounted to a waiver of any right to a change of venue the defendant may have had. *Id*. Here, too, Kirk had many opportunities to obtain a ruling on his application, yet he chose not to do so for nearly 22 months. Under *Chambers*, Kirk's conduct amounted to a waiver of any right to a change of venue he may have had.

### Point VI

Kirk claims the trial court erred in refusing to admit Kirk's evidence concerning his release plan showing the supervision requirements and conditions of parole to which Kirk would be bound (until 2017) if he were not committed as a sexually violent predator. The state raised this issue in a motion *in limine*, which the trial court granted. Kirk preserved this issue and made a sufficient offer of proof at trial. The trial court's "ruling on admissibility of evidence is accorded substantial deference and will not be disturbed, absent an abuse of discretion." *Brown v. Hamid*, 856 S.W.2d 51, 56 (Mo. banc 1993). The trial court's decision to exclude Kirk's proffered evidence was not an abuse of discretion, and Kirk's point is denied.

Under section 632.480(5), a sexually violent predator is someone "who suffers

from a mental abnormality which makes the person more likely than not to engage in predatory acts of sexual violence if not confined in a secure facility." Kirk's evidence that, if he was not committed as a sexually violent predator, he would be operating under various external constraints during the relatively short period of his parole was not relevant to the question of whether he is "more likely than not to engage in predatory acts of sexual violence if not confined in a secure facility." *Id.*

In *Lewis v. State*, 152 S.W.3d 325, 332 (Mo. App. 2004), the court of appeals rejected a similar argument, holding that the question presented under section 632.480(5) was whether the defendant suffers from a mental abnormality that makes him "more likely than not to engage in predatory acts of sexual violence if not confined in a secure facility," and "not whether some external constraints make it less likely that he would engage in such acts." *Id.* at 332. Because the evidence was not relevant, *Lewis* holds that the trial court did not abuse its discretion in excluding it. *Id.* In reaching this conclusion, *Lewis* reviewed several decisions from other states touching on this subject, including *People v. Krah*, 114 Cal.App.4th 534, 7 Cal.Rptr.3d 853, 859–61 (2003). In *Krah*, the California Court of Appeals concluded that evidence regarding conditions of release on probation or parole were not relevant to the issue of whether the defendant was a sexually violent predator, stating:

Krah's theory of relevance reflects a fundamental misunderstanding of [the California statute]. This statutory provision directs the trier of fact to determine whether the defendant has a *"diagnosed mental disorder"* that predisposes him to engage in sexually violent criminal behavior. Evidence of the terms and conditions of a parole release is simply not relevant to the determination whether the defendant has the type of medical condition that is an element of the definition of a sexually violent predator. Further, admitting such evidence might well confuse and mislead a jury. For example, a jury presented with such evidence might mistakenly base its determination on an assessment of the likely effectiveness of the policing function or the prospective parole officer rather than on the relevant evidence pertaining to the defendant's actual mental condition. Section 6601(a)(1) simply does not ask or even permit the trier of fact to consider whether imposing temporary restrictions on the defendant's liberty while he is out of custody would effectively prevent him from committing offenses that his condition otherwise disposes him to commit.

*Id.* at 860 (internal citation omitted).

This Court finds *Lewis* and its reliance upon *Krah* persuasive. The evidence offered by Kirk created an unacceptable risk the jury would be distracted from the issue of whether Kirk suffered from a mental abnormality that makes him more likely than not to engage in predatory acts of sexual violence if not confined in a secure facility and focus, instead, on the question of whether—even if Kirk has such a mental abnormality—the risk of reoffense could be managed (for the relatively short period of Kirk's parole, at least) by means less restrictive than committal and confinement. The latter question has been answered by the legislature and is not to be redecided by the jury on a case-by-case basis.

Kirk does not challenge the holding in *Lewis* but, instead, seeks to distinguish it. He argues he was not offering the evidence of external constraints as standalone substantive evidence as in *Lewis* but should be allowed to have his experts testify to the likely effectiveness of those con-

straints because the state "opened the door" to the issue when the state's experts considered the likely impact of those restraints in doing their risk assessments of Kirk. Kirk was entitled to, and did, cross-examine extensively the state's experts regarding the facts on which they based their conclusions. But this does not mean Kirk had an absolute right to have his experts opine as to whether Kirk's anticipated parole conditions and supervision would mean he was less likely to engage in predatory acts of sexual violence for the relatively short period Kirk would be on parole.

It is not clear what role those external constraints played in the opinions of the state's experts, but it is clear those opinions dealt with the likelihood Kirk would reoffend generally rather than merely for the closed-ended period Kirk would be subject to parole conditions. To allow Kirk to argue the latter, more limited question would create an unacceptable risk of confusion. A trial court has discretion to exclude evidence that presents a high risk of misleading or confusing the jury, even if the opposing party has opened the door to such evidence. Accordingly, even assuming *arguendo* Kirk's claim that the state opened the door to this external constraints evidence, the trial court did not err in excluding Kirk's much more expansive proffer concerning that evidence.

### Point VII

 Kirk claims the trial court erred in submitting to the jury the questions: (1) whether Kirk had been convicted of sodomy, and (2) whether sodomy was a sexually violent offense. This claim is denied.

 There is no Missouri Approved Instruction for the verdict director used in Kirk's trial. "Where there is no applicable MAI, the instruction will be reviewed to determine whether the jury [could] understand the instruction and whether the instruction follows applicable substantive law by submitting the ultimate facts required to sustain a verdict." *Doe 1631 v. Quest Diagnostics, Inc.*, 395 S.W.3d 8, 13 (Mo. banc 2013) (quotation marks and citations omitted). Rule 70.02 provides that the instruction must "be simple, brief, impartial, [and] free from argument." The verdict director given in Kirk's case meets these standards.

As noted above, section 632.480(5) provides, in part, that a sexually violent predator is someone who has committed a sexually violent offense. The jury instruction followed the statutory language precisely. To be sure, the first element of whether Kirk committed a sexually violent offense actually consists of two elements, one factual and one legal. First, the state was required to prove to the jury by clear and convincing evidence the *fact* that Kirk was convicted of sodomy. Second, Kirk's sodomy conviction must qualify as a matter of *law* as a "sexually violent offense" for purposes of section 632.480(5). Kirk does not claim the state failed to prove the fact of his conviction, nor would such a claim be credible in that the state introduced a certified copy of Kirk's sodomy conviction and the jury apparently believed that evidence. Nor does Kirk claim his sodomy conviction does not qualify as a "sexually violent offense" for purposes of section 632.480(5). It plainly does. Instead, Kirk claims only that this latter question should not have been submitted to the jury.

It is not clear the verdict director does submit this latter question to the jury in as much as the instruction plainly states that, as "used in this instruction, 'sexually violent offense' includes the offense of sodomy[,]" leaving to the jury only the factual determination of whether Kirk had been convicted of sodomy. An instruction submitting the factual issue of conviction to

the jury but not the legal question of whether that conviction qualifies as a "sexually violent offense" would not be error. *In re Care & Treatment of Gormon*, 371 S.W.3d 100, 106 (Mo. App. 2012) ("question of whether Appellant's 1978 rape conviction constitutes a sexually violent offense within the ambit of Section 632.480(4) in this case was a question of law for the court to decide").

But it does not stand to reason that it is error to give a jury instruction like the one in this case that submits to the jury the question of whether—as a matter of fact—the defendant had been convicted of a certain offense and instructs the jury that this offense qualifies as a "sexually violent offense" under Missouri law. This instruction correctly and precisely stated the substantive law by articulating all of the elements necessary for the jury to decide the ultimate question before it, i.e., whether Kirk meets the statutory definition of a sexually violent predator. It does so succinctly and without argument, and it does so without risk of confusing or misleading the jury or introducing any false and prejudicial issues into the jury's consideration. Accordingly, the decision to give this verdict director was not error.

*Point VIII*

■ Kirk claims the "trial court erred in submitting Instruction 7." This point was not preserved below, however, as Kirk's counsel made it plain his "objection is not to the instruction itself, Judge, but my objection is to Statute 632.492." Counsel went on to state orally that section 632.492 was unconstitutional on its face because it violated due process and equal protection by mandating that "the judge shall instruct the jury that if it finds that the person is a sexually violent predator, the person shall be committed to the custody of the director of the department of

mental health for control, care and treatment."

■ The giving of Instruction No. 7 in this case was not error because the instruction precisely followed the mandate in section 632.492. *See Lewis*, 152 S.W.3d 325 (no error in giving instruction mandated by section 632.492); *In re Care & Treatment of Scates v. State*, 134 S.W.3d 738 (Mo. App. 2004) (same). To the extent Kirk claims in this Court that the trial court should not have given this instruction because section 632.492 unconstitutionally violates due process and equal protection, this claim was not preserved in the trial court.

■ "[T]he rule is clearly established that in order to preserve a constitutional issue for appellate review, it must be raised at the earliest time consistent with good pleading and orderly procedure and must be kept alive during the course of the proceedings." *State v. Liberty*, 370 S.W.3d 537, 546 (Mo. banc 2012); *see also In re Care & Treatment of Schottel*, 159 S.W.3d 836, 841 n.3 (Mo. banc 2005) (The constitutional claim must be raised "sufficiently early in the process to allow the trial court to identify and rule on the issue and to give adequate notice to the opposing party.") Prior to trial, Kirk made numerous substantive motions concerning the constitutionality of various aspects of the SVPA but never suggested he intended to challenge the constitutionality of section 632.492 or the instruction it mandates trial courts to give. Instead, Kirk raised this issue for the first time in the midst of trial at the instruction conference. This was not sufficient to preserve Kirk's constitutional claim for appellate review under the standard articulated in *Liberty* and other cases, or under the limited exception applied in *Schottel*.

Kirk does not seek plain error review of this claim, and the claim falls short of

meriting relief under that standard. He claims his state and federal constitutional rights of equal protection and due process were violated because, unlike the instructions in most other criminal or civil cases, the instruction mandated under section 632.492 describes the legal consequences of the jury's verdict, was not supported by the evidence, and invited the jury to decide the case based on the prospects of treatment rather than the criteria for finding Kirk to be a sexually violent predator under section 632.480(5).

This Court previously rejected equal protection claims concerning various aspects of the SVPA, noting the "secure confinement of persons adjudicated to be SVPs, as provided in sections 632.480 to 632.513, is narrowly tailored to serve a compelling state interest." *Norton*, 123 S.W.3d at 174. This same interest justifies informing the jury of the consequences of its decision in the limited and unobtrusive manner set forth in section 632.492 even though similar instructions are not required in other civil or criminal jury trials.

██ Nor was the instruction mandated by section 632.492 so fundamentally unfair to Kirk so as to deprive him of his state and federal constitutional rights to due process. A trial under the SVPA will often be replete with references to criminal conduct, both in the respondent's past and the risk of such conduct in the future. Specifically, as noted above, section 632.480(5) requires the jury to find the defendant was convicted of a qualifying criminal act and that he suffers from a mental abnormality that makes him "more likely than not to engage in predatory acts of sexual violence if not confined in a secure facility."

But the state's interest behind the SVPA is not to punish a sexually violent predator, either a second time for his prior sexually violent offense or for the future sexually violent offense he is likely to commit. Instead, the state's interest behind the SVPA is to securely confine sexually violent predators for "control, care and treatment." § 632.492. In the unique circumstances of an SVPA trial, it was not unconstitutionally unfair for the legislature to require courts to advise juries of the true consequences of their decisions rather than allow them to speculate (perhaps falsely) about them.

Nor do Kirk's other arguments persuade the Court that section 632.492 and the instruction it requires are unconstitutional. It makes no sense to challenge the instruction as unsupported by the evidence because, like a definitional instruction or the instruction given in this case informing the jury that sodomy is a sexually violent offense, the instruction required by section 632.492 merely states a proposition of law. As for Kirk's argument that the section 632.492 instruction is misleading or confusing because it might divert the jury from its sole responsibility or minimize the jurors' sense of responsibility for their verdict, these arguments have been rejected repeatedly in the court of appeals. *See, e.g., Lewis*, 152 S.W.3d at 330 (rejecting, in the alternative, a claim that section 632.492 instruction is unfair or misleading); *Scates*, 134 S.W.3d at 742 (same). Even though the claims in *Lewis* and *Scates* did not assert that section 632.492 was unconstitutional, this Court agrees with the conclusion in those cases and holds that the instruction required by section 632.492 does not mislead the jury or present any serious (let alone unconstitutional) risk the jury will minimize its responsibility or base its decision on any factors other than those set forth in a properly drafted verdict director. As a result, there is no merit in Kirk's constitutional challenges to section 632.492.

### Point IX

██ The trial court admitted, over Kirk's objection, Dr. Kircher's testimony

concerning the conclusion she drew in her end-of-confinement report that Kirk was a sexually violent predator and that his case should be referred to the Attorney General and the PRC. Kirk first claims this was error because such testimony is prohibited by section 632.483.5. This is incorrect.

Section 632.483.5 provides, in relevant part: "The determination of the prosecutors' review committee or any member pursuant to this section or section 632.484 shall not be admissible evidence in any proceeding to prove whether or not the person is a sexually violent predator." Dr. Kircher was not a member of the PRC and, by its plain language, nothing in section 632.483.5 precludes her testimony on any subject, let alone her conclusions and the basis for her conclusions in Kirk's end-of-confinement report to the PRC and the Attorney General. Kirk's reliance on *Bradley v. State*, 440 S.W.3d 546 (Mo. App. 2014), similarly is misplaced. In *Bradley*, the court of appeals considered whether section 632.483.5 precluded the report of the MDT, concluding it did not.

> Although section 632.483 uses the term "members" to refer to the individuals comprising both the prosecutors' review committee and the MDT, section 632.483.5 precludes the use of only "determinations." According to section 632.483.4, the MDT does not make a determination—it makes an "assessment." There are several individuals and entities in sections 632.483 and .484 that make "determinations" (e.g., the individual issuing the end-of-confinement report, the prosecutors' review committee, the probate court, and the department of mental health). But the MDT is not among these individuals and entities. Additionally, there is no mention whatsoever of the MDT in section 632.484; the only "members" referred to in section 632.484 are those forming the prosecutors' review committee. Thus, if we

> read the language, "any member pursuant to ... section 632.484," to refer to the MDT, the statute would be nonsensical, as the MDT is not even part of section 632.484, and it does not make determinations of any kind. Consequently, section 632.483.5 does not preclude evidence regarding the MDT assessment.

> A more reasonable reading of the reference to "the determination of ... any member pursuant to this section or section 632.484" is that the vote of any particular member of the prosecutors' review committee when making its determination is not admissible to prove that an individual either is or is not a sexually violent predator. Given that the committee's determination need not be unanimous, the plain intent of section 632.483.5 is to preclude evidence of not only the final determination but also the particular vote of each individual member in rendering the determination. Nothing in the statute precludes evidence of the MDT assessment. While this does not mean that the MDT report was necessarily admissible, it could not be excluded for the reason upon which the probate court relied.

*Id.* at 557–58.

Kirk argues *Bradley* distinguishes between "assessments" and "determinations" and holds the latter are excluded by section 632.483.5. Because Dr. Kircher's end-of-confinement report was a "determination," Kirk concludes it must be inadmissible under section 632.483.5. This misconstrues both *Bradley* and the language of the statute. *Bradley* plainly—and correctly—holds that the language of section 632.483.5 prohibiting the use at trial of "the determination of ... any member pursuant to this section or section 632.484" prohibits the use only of the determina-

tions of the members of the PRC, either as a whole or the individual determinations of any of the PRC members. Here, Dr. Kircher was not a member of the PRC and, therefore, her end-of-confinement report was not a determination by the PRC or a member of the PRC. *Bradley* says nothing about the admissibility of an end-of-confinement report. Instead, it merely holds that, properly construed, section 632.483.5 does not prohibit the use of the MDC's report. Neither *Bradley* nor section 632.483.5 supports Kirk's argument.

 Kirk also claims the trial court should have excluded Dr. Kircher's opinion that Kirk was a sexually violent predator, which she memorialized in Kirk's end-of-confinement report, because Dr. Kircher's opinion was inadmissible under section 490.065. Questions as to the proper interpretation of section 490.065 are, like all questions of statutory interpretation, reviewed *de novo* on appeal. *Kivland v. Columbia Orthopaedic Grp., LLP*, 331 S.W.3d 299, 311 (Mo. banc 2011). But the application of section 490.065 to the facts of a particular case, including and especially the credibility determination to be made in this application where experts offer competing and contradictory testimony concerning the predicates for admissibility under this statute, is reviewed—like all other questions concerning the admissibility of evidence at trial—for an abuse of discretion. *Spalding v. Stewart Title Guar. Co.*, 463 S.W.3d 770, 778 (Mo. banc 2015).

 Section 490.065.3 provides:

The facts or data in a particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing and must be of a type reasonably relied upon by experts in the field in forming opinions or inferences upon the subject and must be otherwise reasonably reliable.

§ 490.065.3. In the context of a trial under the SVPA, the trial court may admit the opinions of mental health experts unless "the sources relied on by the expert are 'so slight as to be fundamentally unsupported.' " *In re Care & Treatment of Sohn*, 473 S.W.3d 225, 229-30 (Mo. App. 2015) (quoting *Doe v. McFarlane*, 207 S.W.3d 52, 62 (Mo. App. 2006)).

Here, Dr. Kircher testified that, in reaching her opinion, she relied on her clinical interview with Kirk [6] and upon her review of Kirk's Missouri Sex Offender Program records, his probation and parole records, and his medical and mental health records from the Department of Corrections. She testified she believed Kirk's records were reasonably reliable and were the type of records reasonably relied upon by professionals in her field. Accordingly, the state laid a sufficient foundation for the admissibility of Dr. Kircher's testimony under section 490.065, and the trial court did not abuse its discretion in believing that foundational evidence and admitting her testimony on that basis. Kirk's claims that her opinions were dated and uninformed were attacks on Dr. Kircher's

**6.** Kirk argues his statements to Dr. Kircher should have been "excluded" because his statutory right to counsel had not been triggered when this clinical interview occurred. Without those statements, Kirk claims Dr. Kircher's opinion was unsupported and should not have been admitted. Kirk offers no analysis or precedent supporting his claim, insisting only that, "If Kirk was questioned in the same way concerning a criminal matter, he would get a

lawyer; but at the [end-of-confinement stage] he does not." This assertion is not self-evident, but even assuming it is true, Kirk's argument has no relevance to whether Dr. Kircher's interview with Kirk formed—at least in part—the basis for her opinion that Kirk was a sexually violent predator. It plainly did and was admitted on that basis. Accordingly, this argument is rejected.

credibility and the weight that should be afforded her opinions, not on the admissibility of those opinions. This point is denied.

## Point X

■■■ Kirk argues the trial court erred by permitting Dr. Mandracchia to testify that Kirk had a score of nine on the Static-2002R. Kirk claims the testimony should have been excluded under section 490.065 because the testimony was not supported by the record and because Dr. Mandracchia previously had indicated a lower score. The Court reviews the admission of evidence for an abuse of discretion. *Elliott v. State*, 215 S.W.3d 88, 92 (Mo. banc 2007). The trial court's decision will only be overruled if it was "against the logic of the circumstances and was so arbitrary or unreasonable as to shock the sense of justice and indicate a lack of careful consideration." *Id.* Even if error is found, the Court will only reverse if the error materially prejudiced defendant's right to a fair trial. *Murrell v. State*, 215 S.W.3d 96, 109-10 (Mo. banc 2007).

Like Dr. Kircher, Dr. Mandracchia testified he relied on Kirk's Missouri Sex Offender Program records, his probation and parole records, and his medical and mental health records from the Department of Corrections. Dr. Mandracchia testified he believed Kirk's records were reasonably reliable and were the types of documents on which experts in his field reasonably relied. Therefore, the court did not abuse its discretion in permitting Dr. Mandracchia to testify concerning his opinions.

■■■ Nor did Dr. Mandracchia's opinion become inadmissible simply because he revised upward the Static-2002R score he previously had given Kirk. The matter was hotly contested, and the trial court carefully considered the matter. Its decision to allow Dr. Mandracchia's testimony was not an abuse of discretion. Dr. Mandracchia testified the increased score resulted from an "oversight" on his part because he neglected to account for Kirk's 1978 juvenile court conviction for a sex offense, which was reflected—based apparently on Kirk's own statements—in one or more of the Department of Corrections' records. Kirk does not deny this conduct occurred and, in fact, Kirk's own expert testified about the same incident. Instead, Kirk claims the documentation in the Department of Corrections' records was insufficient to allow the offense to be used in determining his risk assessment using the Static-2002R. Dr. Mandracchia disagreed, testifying he felt "very strongly" that, under the Static-2002R coding rules, he was right to include the 1978 offense in his assessment because the Department of Corrections' records were reliable and of the type "that I believe I can and should rely on." Following the state's proffer consisting of Dr. Mandracchia's testimony and Kirk's extensive cross-examination, the trial court ruled Dr. Mandracchia's revised risk assessment for Kirk using the Static-2002R would be admitted. This was not an abuse of discretion.[7] As above, Kirk's arguments concerning Dr. Mandracchia's decision to change Kirk's score and the adequacy of the basis for the change went to Dr. Mandracchia's

---

7. Even if Kirk had been able to show the trial court erred in allowing Dr. Mandracchia to testify about the increased score he gave Kirk on the Static-2002R risk assessment, Kirk would not be entitled to a new trial on this ground because he failed to show such an error was prejudicial. In the end, Dr. Mandracchia testified that, regardless of whether he gave Kirk a score of eight or nine on the Static-2002R risk assessment, his opinion that Kirk met the statutory definition of a sexual predator (i.e., that Kirk suffered from a mental abnormality that made him more likely than not to commit a sexually violent offense if not committed) would not change.

credibility and the weight to be given to his opinions, not to the admissibility of those opinions.

Finally, Kirk argues the trial court should have excluded Dr. Mandracchia's revised risk assessment because the state failed to inform Kirk of this change until the morning of trial. As noted above, Dr. Mandracchia testified his earlier risk assessment was based upon an "oversight," and Kirk offers no reason to believe the state failed to apprise Kirk of the change as soon as the state became aware of it. A trial court has broad discretion in reacting to late disclosures of this type and may, in a proper case, use such late disclosure to exclude the new evidence or to grant a continuance. *See Pasalich v. Swanson*, 89 S.W.3d 555 (Mo. App. 2002) (trial court did not abuse its discretion by granting a new trial as sanction for a discovery violation). But Kirk's reliance upon *Swanson* is misplaced. Simply because a particular remedy was appropriate in one case does not mean the same remedy is required in every case. Here, the change was relatively minor (from a score of eight to nine), it was based on information known to and not disputed by Kirk, and the record shows Kirk was not hampered in his ability to challenge the admissibility and weight of the changed score. On this record, and in these circumstances, Kirk fails to show the trial court abused its discretion by not excluding the evidence or ordering a continuance.

### Point XI

Kirk claims the trial court erred in excluding the testimony of Kirk's expert on the results of Kirk's penile plethysmograph ("PPG"). Kirk maintains the results of this PPG test were admissible under section 490.065 because such tests are reliable and reasonably relied on in the field. Where, as here, the application of section 490.065 turns on competing and contradictory expert testimony about whether the statutory criteria are met rather than on the proper construction of the statute, this Court reviews the decision solely for an abuse of discretion. The Court holds the trial court did not abuse its discretion in refusing to admit the testimony of Kirk's expert regarding the results of Kirk's PPG.

Kirk's expert, Dr. Fabian, conducted a PPG on Kirk, and Kirk's counsel sought to elicit testimony about the results of the test at trial. The trial court granted the state's motion *in limine* on this subject, Kirk made an adequate proffer at trial, and he properly preserved this question for appellate review.

At the hearing on the state's objection to PPG evidence, Dr. Fabian explained the procedure utilized during the PPG and testified the test is used in the assessment and treatment of sex offenders. He also testified, however, that the test suffered from a number of problems, including standardization, accuracy, reliability, and other issues. Dr. Fabian admitted that Kirk's test had been his first PPG evaluation, that he was not able to conduct this test in a laboratory, that masturbation prior to the test would skew the results, and that an individual could choose to ignore the PPG stimuli or not cooperate and thereby result in the test having little value. Nevertheless, Dr. Fabian testified he followed the proper procedures, that the PPG is reasonably reliable, and that the PPG is reasonably relied on in the field.

Dr. Stein and Dr. Hoberman testified for the state. Dr. Stein testified the PPG was a good tool for treatment, but any other use would be questionable because a person can easily manipulate the test through various methods. Dr. Stein also testified that, to his knowledge, the PPG had not been standardized or cross-validat-

ed and the majority of professionals in his field would agree that the PPG should only be used for treatment. Dr. Hoberman's testimony was similar. He testified the PPG is not a scientifically reliable and valid test.

Following the testimony from both parties, the trial court refused to admit Kirk's PPG evidence. Even assuming the trial court was not compelled to reach that result, it cannot be said that its decision was an abuse of discretion. *See Dieser v. St. Anthony's Med. Ctr.*, 498 S.W.3d 419, 434 (Mo. banc 2016) (a "trial court abuses its discretion when its ruling is clearly against the logic of the circumstances then before the trial court and is so unreasonable and arbitrary that the ruling shocks the sense of justice and indicates a lack of careful deliberate consideration"). The trial court's decision was based on substantial evidence, it was made after careful consideration, and it does not reflect the sort of arbitrary or capricious behavior that shocks the conscience of the reviewing court so as to warrant a finding of an abuse of discretion. Accordingly, this point is denied.

## Conclusion

For the reasons set forth above, the judgment of the trial court is affirmed.

Breckenridge, C.J., Fischer, Stith, Draper and Russell, JJ., concur.

Powell, J., not participating.