

# In the Missouri Court of Appeals
# Eastern District

## DIVISION THREE

| | | |
|---|---|---|
| IN THE MATTER OF THE CARE AND TREATMENT OF L.D., a/k/a L.E.D., | ) ) ) | No. ED108002 |
| | ) | Appeal from the Circuit Court |
| Appellant. | ) | of the City of St. Louis |
| | ) | |
| | ) | Honorable James E. Sullivan |
| | ) | |
| | ) | |
| | ) | FILED: September 22, 2020 |

### Introduction

L.D. appeals from the judgment of the trial court committing him to the Missouri

Department of Mental Health ("DMH") as a sexually violent predator ("SVP") following a jury

verdict finding that L.D. is an SVP. In Point One, L.D. argues the trial court abused its

discretion in denying his motion to exclude testimony diagnosing L.D. with other specified

paraphilic disorder, non-consent ("OSPD, Non-Consent") because the testimony failed to meet

the standards for admissibility for expert testimony under Section 490.065.[1] In Point Two, L.D.

contends the trial court erred in denying his motions for a judgment of acquittal because there

was insufficient evidence to find L.D. was an SVP. L.D. argues that a diagnosis of OSPD, Non-

Consent cannot constitute a mental abnormality. In Point Three, L.D. alleges the trial court erred

in rejecting his proffered instructions requiring the jury to specifically and unanimously identify

---

[1] All Section references are to RSMo (2016) as supplemented through 2017, unless otherwise indicated.

the precise mental abnormality from which L.D. suffered, rather than requiring the jury to only unanimously agree that L.D. suffered from some mental abnormality.

The record contains substantial expert testimony supporting the reliability of diagnoses of OSPD, Non-Consent. Accordingly, the trial court did not abuse its discretion in allowing testimony diagnosing L.D. with OSPD, Non-Consent, and we deny Point One. Because a diagnosis of OSPD, Non-Consent constitutes a diagnosis of a mental abnormality, we deny Point Two. Because the jury need only find that L.D. suffered from a mental abnormality, and need not be unanimous as to which mental abnormality L.D. suffered, we deny Point Three. Accordingly, we affirm the judgment of the trial court.

Factual and Procedural History

L.D. has a long history of sexual violence and sexual exposure, including convictions for forcible rape and forcible sodomy, the specifics of which are not relevant to this appeal. Due to this history, in December 2017, the State civilly petitioned to have L.D. committed as an SVP to the DMH.

Prior to trial, L.D. filed a motion in limine seeking to exclude any testimony diagnosing L.D. with OSPD, Non-Consent on the basis that such a diagnosis did not meet the threshold for admissibility under Section 490.065. Alternatively, L.D. requested a hearing on the matter. Without conducting a hearing, the trial court denied the motion and ruled that any testimony diagnosing L.D. with OSPD, Non-Consent would be admissible.

The case proceeded to a jury trial. The State called Dr. Kent Franks ("Dr. Franks"), a licensed clinical psychologist. Dr. Franks reviewed L.D.'s records and sought an interview with L.D., which was denied. Dr. Franks testified that he diagnosed L.D. with OSPD, Non-Consent, at which point L.D. objected pursuant to the motion in limine, which the trial court overruled. Dr. Franks testified that atypical sexual arousals only develop into a disorder if the arousals

2

interfere with an individual's social and occupational functioning. Dr. Franks testified that OSPD, Non-Consent involves sexual fantasies, sexual urges, and sexual behavior towards non-consenting individuals that present for more than six months. Dr. Franks testified that paraphilic disorders are chronic and cannot be cured, only managed.

During cross-examination, Dr. Franks testified that the most recent edition of the Diagnostic and Statistical Manual of Mental Disorders (the "DSM"), the DSM-V, is an authoritative resource. Dr. Franks acknowledged that there are six disorders listed as otherwise specified paraphilic disorders in the DSM-V, but that OSPD, Non-Consent is not one of them. Dr. Franks also acknowledged that OSPD, Non-Consent was not listed in the "Items for Further Study" section of the DSM-V. Dr. Franks testified that OSPD, Non-Consent had been proposed for inclusion in the DSM-III and DSM-IV but had been rejected. Dr. Franks nevertheless testified that there is an agreed upon definition for OSPD, Non-Consent used by clinicians based on "[s]exual fantasies, urges, [and] behaviors, directed towards a non-consenting person." Dr. Franks acknowledged the existence of professional articles rejecting OSPD, Non-Consent as a valid psychological diagnosis, as well as professional articles supporting its diagnosis. On redirect examination, Dr. Franks testified that not all sexual disorders are included in the DSM-V because sexual disorders are too complex and varied to possibly list all of them.

The State also called Dr. Nena Kircher ("Dr. Kircher"), a licensed psychologist to testify at trial. Dr. Kircher also diagnosed L.D. with OSPD, Non-Consent. On cross-examination, Dr. Kircher testified that there were non-paraphilic reasons for a person to commit rape and that there was not a consensus on the difference between paraphilic and non-paraphilic rape. On redirect examination, Dr. Kircher testified that all paraphilic disorders have basic diagnostic criteria including at least six months of sustained behavior, interpersonal distress, and sexual

fantasies, urges, or behaviors. Dr. Kircher testified that it has been the practice for decades to analyze and diagnose specific paraphilic disorders not delineated in the DSM by applying these general criteria.

L.D. called Dr. Lisa Witcher ("Dr. Witcher"), a certified forensic examiner with the DMH. Dr. Witcher did not diagnose L.D. with OSPD, Non-Consent. Dr. Witcher testified that there are criteria for diagnosing other specified paraphilic disorders but not for OSPD, Non-Consent.

L.D. also called Dr. Brian Holoyda ("Dr. Holoyda"), a forensic psychiatrist. Dr. Holoyda testified that OSPD, Non-Consent has not been included in the DSM due to insufficient research to support that the disorder exists, insufficient evidence of reliable diagnosability, and numerous organizations' advice against inclusion because the diagnosis is not generally accepted in the fields of psychology and psychiatry. Dr. Holoyda testified that it would not be an acceptable practice to diagnose a condition that has been rejected by the DSM and accompanying literature. Dr. Holoyda testified about multiple studies finding poor inter-rater reliability in diagnosing OSPD, Non-Consent, meaning two people could likely come to different conclusions about whether a given individual has OSPD, Non-Consent, leading to a high rate of false positives. Dr. Holoyda testified that even if OSPD, Non-Consent were a valid construct, the diagnosis was misapplied and over-applied in SVP proceedings. Dr. Holoyda testified that OSPD, Non-Consent was an inappropriate diagnosis to make in forensic settings.

L.D. moved for a directed verdict at both the close of State's evidence and the close of all evidence. The trial court denied both motions.

During the jury instruction conference, L.D. proffered jury instructions specifying OSPD, Non-Consent, as the mental abnormality from which the jury had to find L.D. suffered, rather

than requiring the jury to find only that L.D. suffered from a mental abnormality generally. The trial court rejected the proffered instructions.

The jury unanimously found L.D. to be an SVP. The trial court ordered that L.D. be committed as an SVP. This appeal follows.

Points on Appeal

In Point One, L.D. argues the trial court abused its discretion in denying L.D.'s motion to exclude testimony diagnosing L.D. with OSPD, Non-Consent because the testimony failed to meet the standards for admissibility under Section 490.065. In Point Two, L.D. contends the trial court erred in denying his motions for a judgment of acquittal because there was insufficient evidence to find L.D. was an SVP because a diagnosis of OSPD, Non-Consent cannot constitute a mental abnormality. In Point Three, L.D. alleges the trial court erred in rejecting his proffered instructions requiring the jury find L.D. suffered from OSPD, Non-Consent specifically as opposed to a mental abnormality generally.

Discussion

## I.      Points One and Two—OSPD, Non-Consent

L.D.'s first two points on appeal challenge the trial court's ruling allowing expert witness testimony diagnosing L.D. with OSPD, Non-Consent, and then allowing said diagnosis to support a finding of mental abnormality required to commit L.D. as an SVP.

### A.      Standard of Review for Point One

We review a trial court's ruling on the admissibility of expert testimony under Section 490.065 for whether the trial court abused its discretion. Kirk v. State, 520 S.W.3d 443, 461, 462 (Mo. banc 2017) (internal citation omitted). We will find the trial court abused its discretion and reverse the judgment only if the trial court's ruling "was against the logic of the circumstances and was so arbitrary or unreasonable as to shock the sense of justice and indicate a

5

lack of careful consideration." Id. at 461 (internal quotation omitted).  Further, we will find an abuse of discretion only if an erroneous ruling materially prejudiced the respondent's right to a fair trial.  Id. (internal citation omitted).

> B.      Analysis

"Missouri's SVP statute is civil in nature."  Elliott v. State, 215 S.W.3d 88, 93 (Mo. banc 2007) (internal citation omitted).  "Admission of expert testimony in civil cases is governed by [S]ection 490.065."  Id. (internal citation omitted).  Section 490.065.1 governs the admission of expert testimony in all proceedings before the probate division of the circuit court.  See Section 632.486 (providing that SVP proceedings occur in the probate division); see also generally Jones v. State, 565 S.W.3d 704 (Mo. App. S.D. 2018) (discussing the relationship between SVP proceedings and the probate division).  Section 490.065.1 provides:

(1) If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise;

(2) Testimony by such an expert witness in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact;

(3) The facts or data in a particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing and must be of a type reasonably relied upon by experts in the field in forming opinions or inferences upon the subject and must be otherwise reasonably reliable;

(4) If a reasonable foundation is laid, an expert may testify in terms of opinion or inference and give the reasons therefor without the use of hypothetical questions, unless the court believes the use of a hypothetical question will make the expert's opinion more understandable or of greater assistance to the jury due to the particular facts of the case.[2]

---

[2] Section 490.065.1 "retains verbatim the substance of the previous version of the statute[,]" as opposed to Section 490.065.2 which "adopts an approach to the admissibility of expert opinions that is consistent with federal standards[.]"  State ex rel. Gardner v. Wright, 562 S.W.3d 311, 315–16 (Mo. App. E.D. 2018).

6

Section 490.065.1(1) requires that the expert testimony assist the trier of fact in the determination of the issues and that the testifying expert be qualified. Here, L.D. does not contest that testimony about OSPD, Non-Consent would have assisted the jury. Nor does L.D challenge the qualifications of Dr. Franks or Dr. Kircher. With no challenge to the State's compliance with the requirements of Section 490.065.1(1), we proceed in analyzing the contested statutory provision. See Murrell v. State, 215 S.W.3d 96, 110 (Mo. banc 2007) (forgoing review of whether the analogous provision in a previous version of the statute was satisfied when the appellant disputed only the satisfaction of another provision).

L.D. maintains that diagnoses of OSPD, Non-Consent are not reasonably relied upon by experts in the psychological field and are not otherwise reasonably reliable as required by Section 490.065.1(3). More specifically, L.D. posits that diagnoses of OSPD, Non-Consent are not generally accepted or reasonably relied upon by experts in the field, that diagnoses of OSPD, Non-Consent cannot be reliably tested, that OSPD, Non-Consent is not included as a diagnosis in the DSM-V, and that OSPD, Non-Consent diagnoses may be false positives due to a low level of inter-rater reliability.

The State adduced significant expert testimony that disagreed with the testimony provided by L.D.'s experts. Both Drs. Franks and Kircher diagnosed L.D. with OSPD, Non-Consent. Dr. Franks testified that there exists an agreed-upon definition of OSPD, Non-Consent used by clinicians despite the exclusion of said diagnosis from the DSM-V. Dr. Franks testified that the DSM-V is not exhaustive of diagnoses and omits many sexual disorders recognized by practitioners and clinicians. Notably, Dr. Kircher testified that experts in the field for decades have engaged in a consistent practice of diagnosing paraphilic disorders not included in the

7

DSM.  In so doing, experts utilize the DSM's general framework as a basis for diagnosing paraphilic disorders.

The record amply evidences professional debate over the propriety of diagnosing a person with OSPD, Non-Consent.  This debate notwithstanding, the record shows that many experts in the field understand themselves to be reasonably relying upon diagnoses of OSPD, Non-Consent, and further accept such diagnoses to be reasonably reliable.  Differences of opinion within a field of scientific expertise is not uncommon, and "disagreement between experts does not require the exclusion of either expert."  In re Shafer, 171 S.W.3d 768, 773 (Mo. App. S.D. 2005) (citing Alcorn v. Union Pac. R.R. Co., 50 S.W.3d 226, 246 (Mo. banc 2001) (overruled on other grounds by Badahman v. Catering St. Louis, 395 S.W.3d 29, 39–40 (Mo. banc 2013)); see Section 490.065.1(3).  Under the applicable statutory standard, the expert testimony offered by Drs. Franks and Kircher should only be excluded if their opinions are based upon sources "so slight as to be fundamentally unsupported[.]"  See Matter of Sohn, 473 S.W.3d 225, 229–30 (Mo. App. E.D. 2015) (internal citations omitted).  The existence of testimony that OSPD, Non-Consent commonly has been diagnosed in a manner not contrary to, but in fact modeled after the DSM's criteria for diagnosing paraphilic disorders, undermines L.D.'s argument that such diagnoses are not professionally supported and require the exclusion of such testimony from the jury under Section 490.065.1.  See id.  We are reminded that, "questions as to the sources and bases of the expert's opinion affect the weight, rather than the admissibility, of the opinion, and are properly left to the jury."  Id. at 230 (internal quotation omitted).

In light of the professional debate over OSPD, Non-Consent, even assuming that the trial court could have exercised its discretion to exclude the testimony of Drs. Franks and Kircher, "it cannot be said that its decision [to admit the testimony] was an abuse of discretion."  See Kirk,

8

520 S.W.3d at 463 (internal citation omitted) (finding no abuse of discretion where the trial court in an SVP proceeding excluded expert testimony on the results of a penile plethysmograph test because there was significant expert support **on both sides** as to whether the test was reliably relied upon by experts in the field and was otherwise reasonably reliable). We are persuaded that "[t]he trial court's decision was based on substantial evidence, . . . was made after careful consideration, and . . . does not reflect the sort of arbitrary or capricious behavior that shocks the conscience of the reviewing court so as to warrant a finding of an abuse of discretion." See id. Point One is denied.

In Point Two, L.D. contends the trial court erred in denying his motions for a judgment of acquittal because OSPD, Non-Consent does not constitute a mental abnormality and, therefore, the record contains insufficient evidence to find L.D. was an SVP. We note that L.D. acknowledges in his brief that our courts have consistently held that a diagnosis of OSPD, Non-Consent is sufficient evidence to establish a mental abnormality and support a finding that the respondent is an SVP. See Nelson v. State, 521 S.W.3d 229, 233 (Mo. banc 2017) (internal citations omitted); In re Cozart, 433 S.W.3d 483, 491 (Mo. App. E.D. 2014); In re Parnell, 390 S.W.3d 849, 852 (Mo. App. S.D. 2013). The foundation of L.D.'s second point on appeal is precariously perched upon his unsuccessful argument presented in Point One. Our rejection of L.D.'s first point on appeal leads to our corresponding rejection of his second point. Point Two is denied.

## II. Point Three—Jury Unanimity

In his final point on appeal, L.D. maintains that the trial court was required to submit his proffered jury instructions requiring the jury to find not only that L.D. suffered from a mental abnormality, but that L.D. suffered the specific mental abnormality of OSPD, Non-Consent.

9

A.      Standard of Review

"Whether a jury was properly instructed is a question of law that this Court reviews de novo." In re Ginnery, 295 S.W.3d 871, 873 (Mo. App. S.D. 2009) (quoting Edgerton v. Morrison, 280 S.W.3d 62, 65 (Mo. banc 2009)). We will only reverse a jury verdict on the basis of instructional error "if the offending instruction misdirected, misled, or confused the jury, resulting in prejudice to the party challenging the instruction." Id. (internal quotation omitted). The party alleging instructional error bears the burden of showing the jury was misdirected, misled, or confused. Id. (internal citation omitted).

B.      Analysis

L.D. is correct in maintaining that the jury's finding that he is an SVP must be unanimous. Section 632.495.1. However, the Supreme Court of Missouri has rejected the level of unanimity L.D. urges this Court to impose in Point Three. Specifically, our Supreme Court has held that a jury verdict finding a respondent to be an SVP ***need not be unanimous as to the precise mental abnormality from which the respondent suffers***, but need only unanimously find that the respondent suffers from a mental abnormality. Matter of D.N., 598 S.W.3d 108, 119–20 (Mo. banc 2020).[3] The jury-unanimity requirement does not require the jury to be unanimous "as to the precise means by which an essential element of an offense is established." Id. at 120 (citing State v. Celis-Garcia, 344 S.W.3d 150, 155 (Mo. banc 2011)). "The jury needs to be unanimous only as to the ultimate issue," which in this case is "the existence of a mental abnormality that increases [L.D.'s] likelihood of committing predatory acts of sexual violence[.]" See id.

---

[3] We note that although this opinion was handed down shortly after L.D. filed his initial brief on appeal, the hand-down occurred approximately four months before L.D.'s reply brief was due.

10

The trial court did not err in declining to submit L.D.'s proposed instructions requiring a unanimous jury finding as to a specific mental abnormality from which L.D. suffered. See id.; In re Ginnery, 295 S.W.3d at 873 (internal citation omitted). Point Three is denied.

Conclusion

The judgment of the trial court is affirmed.

_____
KURT S. ODENWALD, Judge

Angela T. Quigless, P.J., concurs.
James M. Dowd, J., concurs.