**STATE of Missouri, Plaintiff-Respondent,**

**v.**

**Kenneth A. STEWART, Defendant-Appellant.**

**No. SD 34334**

Missouri Court of Appeals,
Southern District,
**Division One.**

Filed: May 23, 2017

681

ELLEN H. FLOTTMAN, Columbia, MO, for Appellant.

KAREN L. KRAMER, Jefferson City, MO, for Respondent.

DON E. BURRELL, J.

Kenneth A. Stewart ("Defendant") appeals his convictions after a jury trial of two counts of endangering the welfare of a

child and two related counts of armed criminal action. *See* sections 568.045 and 571.015.[1] Defendant's sole point claims the trial court plainly erred in denying his request to have venireperson no. 19 ("Juror 6") removed from the panel for cause. Defendant did not present this claim to the trial court in his motion for new trial, so he seeks plain-error review under Rule 30.20, insisting that Juror 6's subsequent service on the jury "resulted in a manifest injustice" because Juror 6 stated that " 'there's no way of knowing' " whether "she would be fair and impartial in a case involving child endangerment." Because the trial court's ruling did not amount to evident, obvious, and clear error, we affirm Movant's convictions.

### Governing Law and Applicable Principles of Review

"It is fundamental that a criminal defendant is entitled to a jury composed of only those who are free from any bias or prejudice." *State v. McKee*, 826 S.W.2d 26, 28 (Mo. App. W.D. 1992). Specifically, "[t]he trial court must strike for cause prospective jurors when they exhibit prejudicial bias because the victim is a child." *State v. Clark*, 981 S.W.2d 143, 147 (Mo. banc 1998). "If the voir dire is constitutionally sufficient, the final decisions as to which members of the venire are not impartial lies within the sound discretion of the trial court." *State v. Nicklasson*, 967 S.W.2d 596, 611-12 (Mo. banc 1998).

"In determining whether plain error has, in fact, occurred—the first step in a plain error analysis—we note that generally, '[a] trial court's ruling on a chal-

1. This was Defendant's second jury trial on these charges. In *State v. Stewart*, 482 S.W.3d 426, 430 (Mo. App. S.D. 2015), we reversed Defendant's original convictions on these charges, and related convictions for first-degree assault and armed criminal action were affirmed as unchallenged. The reference to section 571.015 is to RSMo (2000). All other statutory references are to RSMo Cum. Supp. (2012). All rule references are to Missouri Court Rules (2017).

lenge for cause will be upheld on appeal unless it is clearly against the evidence and is a clear abuse of discretion.' " *State v. Garrison*, 276 S.W.3d 372, 376 (Mo. App. S.D. 2009) (quoting *Joy v. Morrison*, 254 S.W.3d 885, 888 (Mo. banc 2008)). To reverse for plain error, a reviewing court must ultimately find that manifest injustice or a miscarriage of justice has resulted from the trial court error. *State v. Worthington*, 8 S.W.3d 83, 87 (Mo. banc 1999). "Plain errors are those which are 'evident, obvious, and clear.' " *State v. Scurlock*, 998 S.W.2d 578, 586 (Mo. App. W.D. 1999) (quoting *State v. Bailey*, 839 S.W.2d 657, 661 (Mo. App. W.D. 1992)). If such error appears, then (and only then) the court must determine "whether the claimed error resulted in manifest injustice or a miscarriage of justice." *Id*.

### Relevant Facts and Procedural Background

Defendant does not challenge the sufficiency of the evidence supporting his convictions. Thus, we relate only facts relevant to the trial court's denial of Defendant's challenge for cause to Juror 6.

During *voir dire*, the trial court informed the panel of prospective jurors that Defendant had been charged with "the offenses of endangering the welfare of two children [ ("the children") ] and two counts of armed criminal action." It also told the panel that "[D]efendant has ple[aded] not guilty to the charges." Each panel member was asked to answer some preliminary questions about themselves. Juror 6 stated her name, the number of years she had lived in Greene County, her marital status, that she had no children, and that she

operated a dance academy. During the prosecutor's portion of *voir dire*, the panel was told the names of the children and that their ages were five and seven at the time of trial.

In response to questions from defense counsel, Juror 6 disclosed that she knew another member of the panel, but she said that the other person would not "have any more influence over [her] than anybody else[.]" Juror 6 also disclosed that she had "a good friend in the St. Louis area who's an officer with the police department[,]" but she said she would not "have a hard time" telling that friend that she had found someone not guilty.

Defense counsel later asked, "Is there anybody here . . . for any reason, that you don't think you can sit on this jury?" Juror 6 was among a group of panelists who raised their hands in response to that question. Defense counsel then called on each of those panelists, and the following is the exchange with Juror 6.

[Defense counsel]: . . . . Yes.

[Juror 6]: I'm [Juror 6]. I'm a CASA volunteer[2], and so I've worked with similar cases, not—probably not this one, and it's been a while since I've had a case. It was three years since my last case, but that is something that I've—I just feel like you should be aware of.

[Defense counsel]: Okay. And do you think that that—your experience as being a CASA volunteer—that that would be playing in the back of your head a little bit and possibly not make you fair and impartial in this case?

[Juror 6]: I think—I think I can be objective, but I also think that with

**2.** We presume "CASA" to be a reference to a "court-appointed special advocate"—a person involved in a program concerning "children with abuse or neglect cases under the jurisdiction of the court[.]" Section 476.777.1 and

3(2). *Cf.* Rule 110.04(a)(4) (a " 'court appointed special advocate' means a volunteer advocate . . . sworn as an officer of the court and appointed to . . . assist in the performance of guardian ad litem duties for the court").

children, it's—it would be more emotional or—I'm trying to find the right words. I would be objective, but maybe [sic] more difficult because of the children to be objective.

[Defense counsel]: And that's what we're going to be dealing with, is, at the time, I believe, they were three and four years old.

So that would definitely be playing in the back of your head?

[Juror 6]: I mean, yeah. I mean, there's no way of really knowing based on the cases that I've worked with and the information that will be given in the case. I—I have no way of judging how similar it would be or the possibility that it would be blank in my mind or not, I guess.

[Defense counsel]: So you don't know?

[Juror 6]: I don't really know.

[Defense counsel]: Okay. It might affect you; it might not?

[Juror 6]: It could; it could not. I mean, either way.

[Defense counsel]: Fair enough. Thank you.

After the conclusion of *voir dire*, defense counsel sought to remove Juror 6 for cause in the following exchange.

[Defense counsel]: [Juror 6]. She was a volunteer and she would also have some issues with children—with children being involved.

[Prosecutor]: So what she's saying—I would strongly encourage the Court to keep [Juror 6]. She's saying it's something totally different. She said—her quote was: "I can be objective; with kids it is more emotional."

That statement is true with everybody. It doesn't have anything to do with her job or her being involved in CASA. So I would ask that we keep her.

[Defense counsel]: Well, I think when I pushed her on it she said—she was going further away from fair and impartial.

[The trial court]: Well—

[Prosecutor]: She said she'd be emotional, which it's hard to separate that out when the charges are someone shooting your children.

[The trial court]: Okay. I'll overrule the request for her.

Defense counsel did not use a peremptory strike on Juror 6, and she then became a member of the jury that found Defendant guilty of all counts. Defendant qualified for (and did not waive) jury sentencing, and the jury recommended sentences of two years imprisonment for each of the two endangering-the-welfare-of-a-child counts and three years on each of the two counts charging armed criminal action. The trial court subsequently sentenced Defendant in accordance with the jury's recommendation. This appeal timely followed.

## Analysis

■ In support of his point, Defendant argues that Juror 6 "wavered from her first indication that she would be objective and agreed that she could not say how her CASA experiences would play out when she heard the evidence involving danger to children[.]" The State responds that there was no plain error here because Juror 6's "responses did not indicate that she could not be fair and impartial and follow the court's instructions." We agree.

■ "An admission by a venireperson that she could not put a past experience out of her mind is not determinative of the qualifications of the venireman. The prop-

er question is whether or not that experience would produce bias or prejudice against the defendant on trial." *State v. Kinder*, 942 S.W.2d 313, 336 (Mo. banc 1996) (quotations omitted).[3] "Whether bias or prejudice exists is a finding of fact, the determination of which 'is essentially one of credibility, and therefore largely one of demeanor.' " *State v. Leisure*, 749 S.W.2d 366, 372 (Mo. banc 1988) (quoting *Patton v. Yount*, 467 U.S. 1025, 1038, 104 S.Ct. 2885, 81 L.Ed.2d 847 (1984)).

Here, Juror 6 disclosed that she was "a CASA volunteer[.]" When asked whether her experiences in that regard "would be playing in the back of [her] head a little bit and possibly not make [her] fair and impartial in this case[,]" she responded, "I think I can be objective," and she added "that with children, it's—it would be more emotional[.]" She reiterated, "I would be objective, but maybe [sic] more difficult because of the children to be objective." Juror 6 acknowledged that given her CASA experiences, serving on the jury could be "more emotional" and that being objective could be "more difficult" because children were involved, but she clearly stated that she "would be objective[.]"

Defense counsel first pointed out that the children "were three and four years old[,]" then asked Juror 6 "[s]o that would definitely be playing in the back of your head?" Juror 6 responded that "there's no way of really knowing based on the cases that [she had] worked with and the information that will be given in the case." She had "no way of judging how similar it

would be or the possibility that it would be blank in [her] mind or not[.]"

Defense counsel's next question was whether "[i]t might affect" Juror 6, and she replied, "It could; it could not. I mean, either way." Juror 6 did not indicate that any bias against Defendant was the thing that might affect her. Juror 6's experiences, her ability to put those experiences out of her mind, or the possibility that she would find her service emotional or might have difficulty remaining objective was not determinative of ability to serve as an unbiased and impartial juror. *See Kinder*, 942 S.W.2d at 336. Rather, the critical issue in analyzing Juror 6's qualification was whether her experiences, her recollections of them during trial, or a possible difficulty in remaining objective because the victims were young children "would produce bias or prejudice against" Defendant. *Id.* (quotation omitted).

Defense counsel's inquiry did not elicit any admission or evidence of bias by Juror 6 against Defendant. There is no suggestion in the record that the trial court was unable to observe Juror 6's demeanor during *voir dire*, and a reasonable trial judge could have concluded from Juror 6's responses that her CASA experiences and the facts of the case might affect her and even make it difficult for her to remain objective, but she would nonetheless remain unbiased. *See Leisure*, 749 S.W.2d at 372. As a result, we find no evident, obvious, and clear error by the trial court in denying Defendant's motion to strike. Point 1 is denied, and Defendant's convictions are affirmed.

---

**3.** *Kinder* involved convictions for "first degree murder, rape, and armed criminal action[,]" and one of the jurors "indicated that her niece was abducted and raped, and that she was unable to put aside this experience and could not refrain from using that experience to persuade others during deliberation."

*Id.* at 320, 336. But there was "nothing in the record to indicate that [the juror] was biased against Kinder because of her niece's experience. Therefore, even if counsel had requested that [the juror] be stricken for cause, the trial court was not obligated to honor that request." *Id.* at 336.

JEFFREY W. BATES, P.J.—
CONCURS

MARY W. SHEFFIELD, C.J.—
CONCURS