In the Matter of the Care and Treatment of Jay NELSON, a/k/a Jay T. Nelson, a/k/a Jay T. Nelson, Jr., Appellant,

v.

STATE of Missouri, Respondent.

No. SC 95975

Supreme Court of Missouri,
en banc.

Opinion issued June 27, 2017

Nelson was represented by Chelsea R. Mitchell of the public defender's office in Columbia, (573) 777-9977.

The state was represented by Gregory M. Goodwin of the attorney general's office in Jefferson City, (573) 751-3321.

Paul C. Wilson, Judge

Following a jury trial, Jay Nelson ("Nelson") was committed to the custody of the Department of Mental Health under the Sexually Violent Predator Act, sections 632.480 through 632.525 (the "SVPA").[1] Nelson appealed, and the court of appeals transferred the case to this Court prior to opinion on the ground the appeal involves issues within this Court's exclusive appellate jurisdiction as set forth in article V, section 3, of the Missouri Constitution. For the reasons set forth in *In re Care & Treatment of Kirk*, No. SC95752, 520 S.W.3d 443, 448 (Mo. banc June ___, 2017), 2017 WL 2774419, decided concurrently herewith, Nelson's constitutional claims

are merely colorable and do not invoke this Court's exclusive jurisdiction. Nevertheless, the Court—on its own motion—grants transfer from the court of appeals prior to opinion pursuant to Rule 83.01 and, therefore, has jurisdiction under article V, section 10, of the Missouri Constitution. *Id.; Armstrong-Trotwood, LLC v. State Tax Comm'n*, 516 S.W.3d 830, 835 (Mo. banc 2017).

## Facts

In 1988, Nelson broke into a woman's home, threatened to kill her, and brutally raped her on top of broken glass. While serving his sentence for that crime, Nelson received 55 conduct violations for sexual misconduct and failed to complete the Missouri Sex Offender Program. Nelson would often masturbate in a way that would allow female correctional staff to see him and would often target certain individuals. He also shouted violent sexual threats at the female staff, threatening to kidnap them, sexually assault them, and kill them. On several occasions, Nelson went beyond threats and sexually assaulted female corrections staff. Nelson grabbed the buttocks of one staff member; he brushed his hand against the pubic bone of another; and he grabbed the crotch of a third staff member.

Dr. Nena Kircher, a licensed psychologist, evaluated Nelson to determine whether he satisfied the statutory definition of a sexually violent predator. She reviewed his history of sexual violence, Nelson's responses during an interview she had with him, and Nelson's medical, mental health, and probation and parole records. Dr. Kircher diagnosed Nelson with Antisocial Personality Disorder ("ASPD") and exhibitionism. She opined these conditions rose to the level of a mental abnormality and

---

1. Unless otherwise stated, all statutory references are to the Revised Statutes of Missouri Supp. 2014, when available, and otherwise RSMo 2000.

concluded this mental abnormality caused Nelson serious difficulty in controlling his behavior.

Finally, Dr. Kircher concluded it was more likely than not Nelson would commit a future act of predatory sexual violence unless placed in a secure facility. In reaching this conclusion, Dr. Kircher relied on the Static-99R and the Stable-2007 tests. Nelson scored a four on the Static-99R, indicating he had a moderate-to-high risk of reoffending, and a score of 17 on the Stable-2007, indicating he had a high risk of reoffending. In addition, Dr. Kircher testified that Nelson demonstrated several other risk factors, including sexual preoccupation, numerous grievances and hostility, non-compliance with supervision, poor cognitive problem solving, impulsiveness, and a lack of emotionally intimate relationships. Considering all of this information, Dr. Kircher opined that Nelson had a high risk of reoffending if not securely confined and, therefore, satisfied the statutory definition of a sexually violent predator.

Another licensed psychologist, Dr. Jeannette Simmons, also concluded Nelson was a sexually violent predator and it was more likely than not he would commit a future act of predatory sexual violence if not securely confined. Dr. Simmons considered Nelson's history of sexual violence, the answers he gave in an interview, his score on the Static-99R, and risk factors. Dr. Simmons diagnosed Nelson with the mental abnormalities of exhibitionism and paraphilia NOS, non consent. These abnormalities, in Dr. Simmons' opinion, caused Nelson serious difficulty controlling his behavior. She concluded Nelson "seeks out individuals that he would like to prey upon" and would continue this predatory sexual violence unless confined to a secure facility.

## Analysis

■ Nelson's constitutional claims proceed principally from his assertion that the purpose and effect of the SVPA is punitive. As explained in *Kirk*, this and similar assertions (as well as the constitutional claims flowing from them) have been thoroughly reviewed and rejected by this Court in the past. *Kirk*, 520 S.W.3d at 449–52. Nelson, like Kirk, claims various amendments to the SVPA—including amendments to the release provisions procedures and, more importantly, claims as to how those provisions are being or could be applied unconstitutionally under circumstances not now before the Court—should convince this Court that the essential purpose and effect of the SVPA have changed and, therefore, that constitutional claims previously rejected should now carry the day. *Kirk* rejects those arguments. Accordingly, the claims properly preserved and presented in Nelson's Points I-IV also are rejected and the balance of this opinion deals solely with Nelson's other claims.

### *Point V*

■ Nelson's fifth point is the trial court erred in allowing the use of the phrase "sexually violent predator" at trial and thereby violated his right to due process and a fair trial. To establish a due process violation in this context, Nelson has the burden of establishing the improper statements "had a decisive effect on the jury's determination." *State v. Perry*, 275 S.W.3d 237, 245 (Mo. banc 2009). There must be a "sound, substantial manifestation, a strong clear showing, that injustice or miscarriage of justice will result if relief is not given." *Id.*

The Court rejects Nelson's argument because the term "sexually violent predator" was specifically chosen and defined by the legislature when it enacted the SVPA.

At the trial in this case, the state bore the burden of proving by clear and convincing evidence that Nelson met the statutory definition of a sexually violent predator and that he was more likely than not to commit a future act of predatory sexual violence. The state's experts testified extensively about the statutory criteria to be a sexually violent predator, and Nelson provides no precedent or compelling argument why the use of the term chosen and defined by the legislature was so unfairly prejudicial as to deprive him of his constitutional right to due process. *See Perry*, 275 S.W.3d at 246 (finding no error in permitting the state to label the defendant a child molester when on trial for molesting a child). The jury was rightfully and necessarily exposed to evidence concerning Nelson's history of sexual violence, expert testimony that Nelson preyed on female victims, and expert opinion that Nelson was more likely than not to commit future acts of sexual violence if not securely confined. In that context, it cannot be said the use of the phrase "sexually violent predator" resulted in a clear miscarriage of justice.

### Point VI

 Nelson asserts the state failed to prove he suffered from a qualifying mental abnormality that caused him serious difficulty controlling sexually violent behaviors, as required by section 632.480(5). When reviewing a sufficiency of the evidence claim, this Court will view "the evidence in a light most favorable to the jury verdict, disregarding all contrary evidence and inferences, and determine[ ] whether the evidence was sufficient" for the jury to determine Nelson suffered from a qualifying mental abnormality. *In re Care & Treatment of Murrell v. State*, 215 S.W.3d 96, 106 (Mo. banc 2007). To establish Nelson had a qualifying mental abnormality, the state had to prove Nelson had: "(1) a congenital or acquired condition; (2) affecting the emotional or volitional capacity; (3) that predisposes [him] to commit sexually violent offenses; (4) in a degree that causes [him] serious difficulty controlling his behavior." *Id.*

Nelson was diagnosed with ASPD and paraphilia NOS, non consent, and both have been found to be qualifying mental abnormalities. *Murrell*, 215 S.W.3d at 108 (holding that ASPD qualifies as a mental abnormality); *In re Care & Treatment of Cozart*, 433 S.W.3d 483, 491 (Mo. App. 2014) (holding that paraphilia NOS, non consent, qualifies as a mental abnormality). Dr. Kircher testified Nelson had ASPD and exhibitionism. This diagnosis, combined with Nelson's "sex offending behavior," convinced Dr. Kircher that Nelson had a mental abnormality rendering him unable to control his behavior. Similarly, Dr. Simmons diagnosed Nelson with exhibitionism and paraphilia NOS, non consent. She testified this meant Nelson was aroused by non-consenting partners. Dr. Simmons opined that paraphilia NOS, non consent, is a mental abnormality that rendered Nelson unable to control his impulses. Nelson attacked the credibility of these experts and their opinions, but the jury was persuaded otherwise. Accordingly, even though Nelson offered contrary evidence, there was sufficient evidence for a reasonable juror to find Nelson suffered from a qualifying mental abnormality.

### Point VII

 Nelson argues the state failed to prove he was more likely than not to commit "predatory acts of sexual violence" if not confined, as required by section 632.480(5). As stated above, this Court views "the evidence in a light most favorable to the jury verdict, disregarding all contrary evidence and inferences, and determines whether the evidence was sufficient" for the jury to conclude Nelson sat-

isfied this aspect of the statutory definition of a sexually violent predator. *Murrell*, 215 S.W.3d at 106.

Both of the state's experts opined Nelson was more likely than not to commit future "predatory acts of sexual violence" if not securely confined. Dr. Simmons was asked by Nelson's counsel if she had concluded "Nelson was more likely than not to commit new acts of predatory sexual violence if not confined to a secure facility," and Dr. Simmons responded she had reached that conclusion. And even though Dr. Kircher did not use the phrase "predatory acts of sexual violence" in opining Nelson was more likely than not to reoffend, her opinion—in context—was more than sufficient evidence for the jury to find the criteria in section 632.480(5) were met. Both experts testified extensively regarding the bases for their opinions, including the rape leading to Nelson's conviction and the many instances of victimizing behavior Nelson committed while in prison. Based on this evidence and the reasonable inferences it supports, there was sufficient evidence for the jury to find Nelson was more likely than not to commit a future predatory act of sexual violence if not confined to a secure facility.

### Point VIII

Building off of the previous point, Nelson claims the state failed to present sufficient evidence to show he is "more likely than not" to commit a future predatory act of sexual violence unless securely confined because the state's experts failed to define for the jury the phrase "more likely than not." He argues that, even though the state's experts opined Nelson was "more likely than not" to reoffend, the evidence was insufficient because the experts failed to define that they understood the phrase "more likely than not" to mean a likelihood greater than 50 percent.

■ "Jurors are credited with ordinary intelligence, common sense and an average understanding of the English language." *Graham v. Goodman*, 850 S.W.2d 351, 355 (Mo. banc 1993). This is true when considering whether a word or phrase in an instruction must be defined, *id.* at 354-55, and it is no less true in considering whether an expert must provide a definition when giving an opinion using the word or phrase referred to in the jury's instructions. Nelson fails to cite any relevant authority or to make any persuasive argument as to why the jury can be trusted to give the phrase "more likely than not" its plain and ordinary meaning but an expert—who is trained and experienced in applying the statutory definition of sexually violent predator—cannot be so trusted.

As set forth in detail above, both of the state's experts concluded Nelson was "more likely than not" to commit another sexually violent offense unless placed in a secure facility, and those opinions were amply supported. Even though the state's experts did not state their opinions in terms of the precise percentage likelihood that Nelson would reoffend, the state offered sufficient evidence—combined with the jury's common sense understanding of the phrase—to determine Nelson was "more likely than not" to commit future predatory acts of sexual violence if not securely confined.

### Point IX

■ In Nelson's ninth point, he argues the trial court erred in excluding character evidence testimony from his sister that he did not expose himself to her or her friends and did not get into fights when he was a child. In reviewing the exclusion of evidence, this Court reviews only for an abuse of discretion. *Murrell*, 215 S.W.3d at 109. An abuse of discretion will not be found unless the ruling "is clearly against the logic of the circum-

stances ... and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." *Id.* Whether, as Nelson claims, the state "opened the door" to this evidence may impact the trial court's analysis as to whether and how much otherwise inadmissible evidence should be admitted, it does not change the nature of appellate review when such evidence is excluded. *Kirk*, 520 S.W.3d at 455–56 ("trial court has discretion to exclude evidence that presents a high risk of misleading or confusing the jury, even if the opposing party has opened the door to such evidence"). Finally, even if the trial court abused its discretion in excluding the evidence, this Court will not order a new trial unless material prejudice can be shown that resulted in the defendant being deprived of a fair trial. *Murrell*, 215 S.W.3d at 109-10.

The court did not err in excluding Nelson's character evidence. Even assuming this evidence was logically relevant, the trial court did not abuse its discretion because this evidence was not legally relevant. *See State v. Anderson*, 76 S.W.3d 275, 276 (Mo. banc 2002) (concluding evidence is legally relevant if its probative value outweighs the risks that the evidence will result in unfair prejudice, will confuse or mislead the jury, or is merely cumulative of other evidence).

The testimony concerning Nelson's childhood behavior toward his sister and her friends has little probative value on whether Nelson—at the time of this trial— met the statutory definition of a sexually violent predator because it was more remote in time than the evidence concerning the rape leading to Nelson's conviction and the many instances of exhibitionism and other misconduct committed by Nelson when he was in prison. Moreover, the evidence of Nelson's childhood behavior

would have been cumulative. One of the state's experts testified there was no evidence Nelson exposed himself prior to being in prison, and Nelson testified he did not expose himself before going to prison. Nelson's sister would have simply been repeating facts the jury already heard. Therefore, the court did not abuse its discretion by excluding this evidence. Because there was no error, the Court does not need to determine whether—on this record—there was any possibility of prejudice sufficient to warrant a new trial.

### Point X

 In his final point, Nelson argues the trial court erred in excluding evidence of his release plan or home plan. Nelson failed to preserve this issue for appellate review. In response to a motion in limine, the trial court indicated this evidence would not be admitted at trial. But to preserve such a claim for appellate review, the party must offer the testimony at trial and make a sufficient offer of proof. *State v. Blurton*, 484 S.W.3d 758, 775-76 (Mo. banc 2016). Here, Nelson did not attempt to introduce evidence of his home plan or his sister's willingness to let Nelson live with her, and no offer of proof was made. Accordingly, Nelson failed to preserve this issue for appellate review and fails to establish the predicates for this Court to apply plain error review.

 Moreover, this Court found no merit to a similar claim in *Kirk*. *Kirk*, 520 S.W.3d at 454–56. The proffered evidence of a release plan in that case was not legally relevant because it would have created "an unacceptable risk" the jury would be distracted from the ultimate issue of whether Kirk suffered from a mental abnormality that qualifies him as a sexually violent predator and "focus, instead, on the question of whether—even if [he had] such a mental abnormality—the risk of reoffense could be managed ... by means less

restrictive than committal and confinement.". *Id.* Nelson provides no argument not already rejected in *Kirk* and, therefore, even if the point had been properly preserved and presented, it would be denied.

## Conclusion

For the reasons set forth above, the judgment of the trial court is affirmed.

Breckenridge, C.J., Fischer, Stith, Draper and Russell, JJ., concur.

Powell, J., not participating.