WILLIAM W. FRANCIS, JR., J.
Martin Reddig ("Reddig") appeals the trial court's judgment committing him to the custody of the Department of Mental Health (the "DMH") following a jury finding that he is a sexually violent predator ("SVP").[1] In this appeal, Reddig challenges the judgment in eight points relied on. Finding no merit to these points, we affirm the judgment of the trial court.
Factual and Procedural History
On June 11, 2015, the State filed a petition in the Circuit Court of Camden County seeking a hearing to determine whether Reddig was a SVP. At the time, Reddig was serving a ten-year sentence in the Missouri Department of Corrections ("DOC"), arising out of his 2006 conviction for first-degree child molestation, pursuant to section 566.067.[2] After trial on April 21 and 22, 2016, a jury found that Reddig was a SVP, and the trial court entered a judgment and commitment order. Reddig's points on appeal assert different-and inconsistent-standards by which we view the record. Accordingly, we set forth the substantive "facts" in the light most favorable to the verdict, and based on the record at trial.[3]
Reddig began viewing pornography at age four. In 1994, at age 16, Reddig experienced sexual thoughts about a three-year-old female cousin. He frequently masturbated to those thoughts, and later suggested *110 that he might have acted on those thoughts if he had access to his cousin.
In 1999, Reddig was 21 and living in Arizona. He would check house doors to see if they were unlocked, and by use of this method, "broke into five or six different houses" with the goal of "rap[ing] a child or an adult." After breaking into one home, he found an 18-year-old woman in her bedroom and tried to rape her at knifepoint. She violently fought Reddig off before he could consummate the rape. She contacted law enforcement, and then directed law enforcement to Reddig when she found him at a bar sometime thereafter. Police found Reddig's fingerprints on both the woman's bedroom door and a knife at the scene. Police questioned Reddig after the woman identified him as her attacker. Reddig falsely reported that "he hadn't done anything, ... had been at a bar[,] ... consumed alcohol [and] had gone home and gone to sleep[,]" and "the charges were dropped."
Reddig viewed child pornography "countless times" between 2000 and 2001. The child victims in these pornographic materials were between four and twelve years old at the times they were depicted.
In 2002, while living in Joplin, Reddig married a woman with a four-year-old daughter. Reddig sodomized the four year old, by digital and genital penetration, on multiple occasions. In February of that year, the four year old reported the abuse, and the authorities were contacted. Reddig was arrested. When confronted with the allegations, he falsely denied them. The charges were thereafter dropped.
In 2006, while living in Camden County, Reddig was in a relationship with an older woman,[4] who had an adult daughter and three young granddaughters, ages four and three. Reddig described the "grooming" behaviors he engaged in with the children's mother to ensure that he had sexual access to the victims. He encouraged the children's mother to get an evening job, and then volunteered to babysit the children. When Reddig took over the babysitting duties, he gave the children baths. Reddig spent a long time washing the girls' genital areas, and would penetrate their genitals with his finger on multiple occasions. Reddig estimated he did this with all three girls more than fifty times over a six-month period. Reddig masturbated to the thought of molesting the girls both before and after he committed the acts. Reddig pled guilty to molesting one of the three granddaughters and was sent to prison.
While in prison, Reddig completed the Missouri Sex Offender Program ("MOSOP"), and was released on parole in 2013. He was allowed to move to Kansas to live with his aunt and uncle. While in an outpatient sex offender treatment program, Reddig admitted to viewing and masturbating to pornography of children as young as four. His treatment was increased, but he continued looking at child pornography for children then as young as age two. Reddig was terminated from outpatient treatment due to concerns that he was going to reoffend.
Reddig also intentionally placed himself in close proximity to children. Reddig accepted a ride from his boss and sat in the back seat with his boss's four children, who were all under the age of nine. Reddig also spent time alone with a boy who was about two years old and with a young girl.
Reddig's parole was ultimately revoked due to these parole violations, and he was returned to the DOC in 2004.
*111 There was a two-day trial on Reddig's SVP status, beginning on April, 21, 2016. Reddig did not testify.
During voir dire , the State's attorney asked the jury panel whether they, or anyone close to them, had been the victim of a sex crime. The jurors who answered publicly were asked if that event would keep them from following the trial court's instructions-Venireperson 30 said a friend had been a victim of such offense, and indicated she wanted to discuss the matter in private.
At the conclusion of the voir dire questioning, the trial court announced to the venire panel that the members of the panel who wanted to speak privately with the court should "stick around after the recess, [and] we'll call you up to the bench one by one and in private you can answer a question that might have been previously posed to you during the process."
The bailiff advised the trial court that he did not get the numbers of anyone wishing to speak in private. The trial court sent the bailiff into the hallway to ask if anyone wanted to speak to the court. The State's attorney noted that some people had originally indicated they wanted to speak in private, but the issue they wished to speak privately about had nevertheless come out during the public questioning. Defense counsel agreed. The bailiff later returned and said that Venireperson 80 was the only person who wanted to speak to the court.
Venireperson 30 was seated on the jury following strikes for cause and peremptory strikes. Defense counsel approached the bench after the jury was seated:
[DEFENSE COUNSEL]: No. 30 was seated. I had a note that she wanted to speak privately to the Court. But, apparently, she changed her mind when they announced that. I don't know if that makes a difference or not, but at one point I know she indicated that she had a friend that had been a victim of sex abuse and she wanted to speak privately.
THE COURT: I don't think it does, because we had the sheriff go out and ask if anyone wanted to approach, and so if she changed her mind, I think she has the right to change her mind. But thank you for pointing that out.
The jury was then sworn. Thereafter, defense counsel requested Juror 30 become the alternate juror. The State did not agree, and the trial court denied defense counsel's request. No other requests were made by defense counsel at that point.
At trial, Dr. Nena Kircher ("Dr. Kircher"), a licensed psychologist for the DMH, testified that she conducted an end-of-confinement evaluation in the spring of 2015, using the criteria set forth in the SVP statute at the time. She interviewed Reddig, and reviewed a number of records reasonably relied on by experts in the field. Dr. Kircher testified that Reddig suffered from pedophilic disorder, such disorder predisposed him to commit acts of sexual violence, and that Reddig would have difficulty controlling his behavior in the future. She opined that to a reasonable degree of psychological certainty, Reddig was more likely than not to engage in future acts of predatory sexual violence if not confined in a secure facility.
Dr. Jeffrey Kline ("Dr. Kline"), a psychologist and certified forensic examiner with the DMH, evaluated Reddig in September 2015. Dr. Kline testified he reviewed extensive records relating, in relevant part, to Reddig's prior offenses, sexual history, confinement, and the report of Dr. Kircher. He testified that the records he reviewed were the types reasonably relied on by experts in the field and that he found the records to be reliable. Dr. Kline also interviewed Reddig.
*112 Dr. Kline opined that, to a reasonable degree of psychological certainty, Reddig suffered from a mental abnormality. He testified that based on Reddig's score on one particular assessment, he had a "27.2 percent" chance of recidivism-however, Dr. Kline explained that this assessment tended to underestimate the likelihood of recidivism. Dr. Kline also opined that Reddig was more likely than not to engage in predatory acts of sexual violence if not confined to a secure facility, and that Reddig did not have the ability to manage his sexual behaviors.
The jury returned a verdict finding that Reddig was a SVP. The trial court entered a judgment and order committing Reddig to the DMH for care, control, and treatment. Reddig filed a motion for new trial, which the trial court thereafter denied. This appeal followed. Reddig challenges the judgment in eight points on appeal.
Principles of Review
Appellate review in an SVP case is limited to a determination of whether there was sufficient evidence admitted from which a reasonable jury could have found each necessary element by clear and convincing evidence. This means that the credibility of witnesses and the weight to be given to their testimony are for the jury to determine. This Court does not reweigh the evidence. Instead, we view the record most favorably to the judgment, disregarding all contrary evidence and inferences, and will not reverse for insufficiency of the evidence unless there is a complete absence of probative facts supporting the judgment.
In re Care and Treatment of Morgan , 398 S.W.3d 483, 485 (Mo.App. S.D. 2013) (internal quotations and citations omitted).
Analysis
Points II, III, IV, V, VI
Reddig conceded at oral argument that the underlying arguments in his Points II, III, IV, V, and VI were addressed (and rejected) in our Supreme Court's recent holdings in Kirk v. State , 520 S.W.3d 443 (Mo. banc 2017), and Nelson v. State , 521 S.W.3d 229 (Mo. banc 2017). We therefore deny Reddig's Points II, III, IV, V, and VI, and address only Points I, VII, and VIII, by Reddig's consent.
Point I: Juror 30
In his first point, Reddig argues that the trial court abused its discretion in failing to replace Juror 30 with an alternate juror because her voir dire responses indicated the possibility of bias and inability to follow the trial court's instructions, and she was not rehabilitated.[5]
Section 494.485, governing the procedure for the use of alternate jurors, states:
If in any case to be tried before a jury it appears to the court to be appropriate, the court may direct that a number of jurors in addition to the regular jury be called and impaneled to sit as alternate jurors. Alternate jurors, in the order in which they are called, shall replace jurors who, prior to the time the jury retires to consider its verdict, become or are found to be unable or disqualified to perform their duties. Alternate jurors shall be selected in the same manner, shall have the same qualifications, shall be subject to the same examination and *113 challenges, shall take the same oath and shall have the same functions, powers, facilities and privileges as the principal jurors. Alternate jurors who do not replace principal jurors shall be discharged after the jury retires to consider its verdict. Each side is entitled to one peremptory challenge in addition to those otherwise allowed by law for each two alternate jurors to be impaneled. The additional peremptory challenge may be used against an alternate juror only, and the other peremptory challenges allowed by law shall not be used against the alternates.
During voir dire , the State's attorney asked the venire panel whether they, or anyone close to them, had been the victim of a sex crime. The venirepersons who answered publicly were asked if that event would keep them from following the trial court's instructions. Venireperson 30 said a friend had been a victim of such offense, and indicated she wanted to discuss the matter in private.[6]
At the conclusion of the voir dire questioning, the trial court announced to the venire panel that the members of the panel who wanted to speak privately with the court should "stick around after the recess, [and] we'll call you up to the bench one by one and in private you can answer a question that might have been previously posed to you during the process."
The bailiff advised the trial court that it did not get the numbers of anyone wishing to speak in private. The trial court sent the bailiff into the hallway to ask if anyone wanted to speak to the court. The State's attorney noted that some people had originally indicated that they wanted to speak in private, but the issue they wished to speak privately about had nevertheless come out during the public questioning. Defense counsel agreed. The bailiff later returned and said that Venireperson 80 was the only person who wanted to speak to the court.
Venireperson 30 was seated on the jury following strikes for cause and peremptory strikes. Defense counsel approached the bench after the jury was seated:
[DEFENSE COUNSEL]: No. 30 was seated. I had a note that she wanted to speak privately to the Court. But, apparently, she changed her mind when they announced that. I don't know if that makes a difference or not, but at one point I know she indicated that she had a friend that had been a victim of sex abuse and she wanted to speak privately.
THE COURT: I don't think it does, because we had the sheriff go out and ask if anyone wanted to approach, and so if she changed her mind, I think she has the right to change her mind. But thank you for pointing that out.
The jury was then sworn. Thereafter, defense counsel requested Juror 30 become the alternate juror. The State did not agree, and the trial court denied defense counsel's request.[7]
*114 A trial court's decision not to replace a juror with an alternate, closely depends on determinations of credibility and fact, which are properly for the trial court. State v. Stewart , 517 S.W.3d 680, 683-84 (Mo.App. S.D. 2017) (internal quotation and citation omitted).
The proponent of such claim must demonstrate, in light of the trial court's authorized explicit and implicit fact findings, the venireperson's experience would (or did ) "produce bias or prejudice against the defendant on trial." Stewart , 517 S.W.3d at 684 (internal quotation and citation omitted) (emphasis added). This is a high bar: a venireperson's admission that a family member had been the victim of a very similar crime, that she would be "unable to put aside this experience," and that she "could not refrain from using that experience to persuade others during deliberation[,]" would not oblige the trial court to strike that venireperson for cause even if explicitly requested to do so. Id. ; see State v. Kinder , 942 S.W.2d 313 (Mo. banc 1996).
Notably, Stewart and Kinder were both criminal cases-"the right to a qualified panel is accorded only to parties in criminal actions, and even then only in limited circumstances." Khoury v. ConAgra Foods, Inc. , 368 S.W.3d 189, 203 n.13 (Mo.App. W.D. 2012). As our Supreme Court indicated in Kirk , SVP proceedings do not trigger the due process guarantees accorded criminal defendants. 520 S.W.3d at 450. Thus, Stewart and Kinder likely describe a less difficult burden for Reddig, as appellant, than he would actually need to meet in order to succeed on this point.
We must presume that the trial court made implicit fact findings based on its first-person observation of the proceedings, Stewart , 517 S.W.3d at 683-84, and that these implicit fact findings informed its decision not to replace Juror 30 with an alternate. Reddig fails to meet his high burden to demonstrate that, based on the extremely limited colloquy in this case, and the trial court's implicit fact findings, Juror 30's presence on the jury would (or did ) "produce bias or prejudice against" Reddig. Id. ; see Kinder , 942 S.W.2d at 336. The trial court did not abuse its discretion in failing to replace Juror 30 with an alternate. Point I is denied.
Point VII: Dr. Kircher's Testimony per the End-of-Confinement Determination and Reddig's Associated Statements
Reddig's seventh point relied on challenges that the trial court erred in overruling Reddig's objection to testimony regarding Dr. Kircher's end-of-confinement determination, and Reddig's associated statements to her. Specifically, he challenges that such evidence was inadmissible because Reddig lacked substantive due process protections ("like a criminal defendant subject to investigative questioning") relating to his questioning by Dr. Kircher, and because Dr. Kircher's opinion was not based on facts and data reasonably relied upon by experts in her field.[8]
Reddig's argument as to Dr. Kircher's testimony was rejected under analogous facts in Kirk :
[Appellant] also claims the trial court should have excluded Dr. Kircher's opinion that [Appellant] was a sexually violent *115 predator, which she memorialized in Kirk's end-of-confinement report, because Dr. Kircher's opinion was inadmissible under section 490.065. Questions as to the proper interpretation of section 490.065 are, like all questions of statutory interpretation, reviewed de novo on appeal. Kivland v. Columbia Orthopaedic Grp., LLP , 331 S.W.3d 299, 311 (Mo. banc 2011). But the application of section 490.065 to the facts of a particular case, including and especially the credibility determination to be made in this application where experts offer competing and contradictory testimony concerning the predicates for admissibility under this statute, is reviewed-like all other questions concerning the admissibility of evidence at trial-for an abuse of discretion. Spalding v. Stewart Title Guar. Co. , 463 S.W.3d 770, 778 (Mo. banc 2015).
Section 490.065.3 provides:
The facts or data in a particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing and must be of a type reasonably relied upon by experts in the field in forming opinions or inferences upon the subject and must be otherwise reasonably reliable.
§ 490.065.3. In the context of a trial under the SVPA, the trial court may admit the opinions of mental health experts unless "the sources relied on by the expert are 'so slight as to be fundamentally unsupported.' " In re Care & Treatment of Sohn , 473 S.W.3d 225, 229-30 (Mo. App. 2015) (quoting Doe v. McFarlane , 207 S.W.3d 52, 62 (Mo. App. 2006) ).
Here, Dr. Kircher testified that, in reaching her opinion, she relied on her clinical interview with [Appellant] and upon her review of [Appellant]'s Missouri Sex Offender Program records, his probation and parole records, and his medical and mental health records from the Department of Corrections. She testified she believed [Appellant]'s records were reasonably reliable and were the type of records reasonably relied upon by professionals in her field. Accordingly, the state laid a sufficient foundation for the admissibility of Dr. Kircher's testimony under section 490.065, and the trial court did not abuse its discretion in believing that foundational evidence and admitting her testimony on that basis. [Appellant]'s claims that her opinions were dated and uninformed were attacks on Dr. Kircher's credibility and the weight that should be afforded her opinions, not on the admissibility of those opinions. This point is denied.
Kirk , 520 S.W.3d at 460-61.
Reddig's due process argument was rejected by the Eastern District of this Court:
[T]o the extent [Appellant] relies on characterizing SVP proceedings as 'criminal' or 'punitive' to claim his due process was violated, his argument is thwarted by precedent. Missouri courts have maintained that the SVPA is not a 'punitive' or a 'criminal' statutory scheme. See Nelson , 521 S.W.3d at 232 ('Nelson's constitutional claims proceed principally from his assertion that the purpose and effect of the SVPA is punitive ... this and similar assertions (as well as the constitutional claims flowing from them) have been thoroughly reviewed and rejected by this Court in the past.'); see also Kirk , 520 S.W.3d at 450 ('One common theme in Kirk's arguments is that SVPA is a criminal statute because its purpose is to punish offenders for past conduct ... [t]his is incorrect.'); see also [In re ] Van Orden , 271 S.W.3d [579,] 585 [ (Mo. banc. 2008) ].
Regarding the federal forum, [Appellant] primarily relies on *116 Van Orden v. Schafer , 129 F.Supp.3d 839 (E.D. Mo. 2015). During the pendency of [Appellant]'s appeal, the United States District Court, E.D. Missouri, vacated the part of the Schafer opinion that supported [Appellant]'s position. Van Orden v. Stringer , 4:09CV00971 AGF, 262 F.Supp.3d 887, [894], 2017 WL 2880348, at *6 (E.D. Mo. July 6, 2017). Upon reconsideration, in light of the Eighth Circuit's decision in Karsjens v. Piper , 845 F.3d 394 (8th Cir. 2017), the Stringer court vacated its 'Amended Memorandum Opinion' from Schafer in part, finding the Karsjen 's decision was 'binding' on the district court. Stringer , 262 F.Supp.3d at ----, 2017 WL 2880348 at *5-6. Accordingly, [Appellant]'s citations to Schafer no longer possess any persuasive value.
Based on the foregoing, in regards to [Appellant]'s rights to counsel and silence, he cannot establish that his rights of due process or equal protection have been violated.
Matter of J.D.B. , 541 S.W.3d 662, 671-73 (Mo.App. E.D. 2017). The trial court did not err in overruling Reddig's objection to testimony regarding Dr. Kircher's end-of-confinement determination, and Reddig's associated statements to her. Point VII is denied.
Point VIII: "More Likely Than Not" Finding
In his eighth point, Reddig argues that the trial court erred in denying his motion for a directed verdict because the evidence was insufficient to support a finding that he was "more likely than not" to commit future acts of predatory violence, pursuant to section 632.480.[9]
In reviewing this claim, we view "the evidence in a light most favorable to the jury verdict, disregarding all contrary evidence and inferences, and determines whether the evidence was sufficient for the jury to conclude [Reddig] satisfied this aspect of the statutory definition of a sexually violent predator." Nelson , 521 S.W.3d at 233-34 (internal quotation and citation omitted).
The State's expert witnesses, Dr. Kline and Dr. Kircher, relying on materials reasonably relied upon by experts in their fields, testified specifically that Reddig was more likely than not to engage in predatory acts of sexual violence if not confined. Both experts testified extensively as to the bases for their opinions. This was "sufficient evidence for the jury to find [this] criteria in section 632.480(5) [was] met." Id. at 234.
The evidence as to Reddig's predicted "27.2 percent" chance of recidivism-the basis of Reddig's challenge-is excluded from consideration under our standard of review. See id. at 233-34. The trial court did not err in denying Reddig's motion for a directed verdict. Point VIII is denied.
The judgment of the trial court is affirmed.
NANCY STEFFEN RAHMEYER, J.-Concurs
JEFFREY W. BATES, J.-Concurs

See sections 632.480 through 632.513. Statutory references are to RSMo Cum.Supp. 2014, unless otherwise noted.

See case number 06CM-CR00203-01.

Our recitation of "facts"-derived from the evidence in the light most favorable to the verdict-relates to Reddig's Point VIII, challenging the sufficiency of the evidence to support the finding that Reddig was a SVP. See Boughton v. State , 437 S.W.3d 368, 373 (Mo.App. S.D. 2014). Our recitation of the record at trial relates to Reddig's remaining points. See State v. Rinehart , 543 S.W.3d 640, 645 (Mo.App. S.D. 2018) (in evaluating trial court error, "[w]e view the facts and circumstances as then presented to the trial court-as the record up to that time so reveals. We defer to the trial court's relevant 'factual underpinning' findings for matters of law under review, and the trial court's fact findings (explicit and implicit) from its order rejecting [appellant]'s motion for new trial.") (emphasis in original); cf. , State v. Banks , 215 S.W.3d 118, 122 (Mo. banc 2007).

Reddig had a son with this woman.

At oral argument, Reddig suggested that this issue should be reviewed de novo. The State argues that there was no objection until after the jury was sworn, and therefore, the applicable standard of review is plain error. Whether reviewed de novo , for plain error, or for abuse of discretion, our disposition would be the same as to this point.

The entire colloquy with Venireperson 30 is as follows:
[STATE]: [A]nybody here been the victim of or had someone close to them be the victim of a sex crime, whether it was reported or not? Okay. And if you've already answered it or said "private," you don't need to raise your paddles again, but I do want to hear from other people.
....
[STATE]: Okay. No. 30?
VENIREPERSON 30: It was a friend I knew.
[STATE]: Private?
VENIREPERSON 30: Uh-huh.
[STATE]: Yeah.

The trial court is presumed to know and apply the law. Jaco v. Jaco , 516 S.W.3d 429, 433 (Mo.App. W.D. 2017). Thus, we must presume that the trial court's ruling was based on what it was authorized to consider.

Reddig failed to timely object at trial to the now challenged testimony; he argues that his claim is nevertheless preserved, but requests plain error review if it we find it is not. Whether we treat Reddig's argument as preserved or unpreserved, his claim has been directly rejected by our courts, and would fail under either standard of review.

Section 632.480(5) defines "[s]exually violent predator," in relevant part, as:
any person who suffers from a mental abnormality which makes the person more likely than not to engage in predatory acts of sexual violence if not confined in a secure facility and who ... [h]as pled guilty or been found guilty in this state or any other jurisdiction, or been found not guilty by reason of mental disease or defect pursuant to section 552.030, of a sexually violent offense[.]